# Chicago, Burlington & Quincy Railroad Company v. Cornelius O'Connor.

### Filed October 2, 1894. No. 5227.

1. **Eminent Domain:** Construction of Railroads in Streets: Action for Damages to Abutting Property Owner: Limitation: Measure of Damages: Additional Burdens. A railway company constructed in a public street in front of the lot and dwelling house of plaintiff, fronting on said street, its railway track, and operated its trains and cars thereon. Subsequently the railway company erected in said street, in front of plaintiff's property, a coal house, hoisting apparatus, and side tracks for use in connection therewith. The coal house had a capacity of forty thousand tons, and was filled from cars pushed on said side tracks. The tenders of the engines of the railway company were run on these side tracks and supplied with coal from the coal house. The walls, foundations, and plastering of plaintiff's house were injured by the concussion produced by heavy trains and engines running to and from said coal house. The occupants of plaintiff's premises were annoyed by the ringing of bells and the sounding of whistles of the engines hauling cars to and from said coal house and being loaded with coal thereat. Smoke and steam from engines on said side tracks, and dust and soot arising from the loading and unloading of coal at said coal house, drifted on the property and into the dwelling house of plaintiff, rendering its occupation uncomfortable, and depreciating its rental value. *Held*, (1) That at the time the railway company first constructed its railway track in the street in front of plaintiff's property there at once accrued to the owner of such property, if he was thereby injured, a right of action against the railway company, and that this right of action was barred after four years from the date of the railway company's first occupation of the street; (2) that had the owner of said property brought such action, the measure of damages would have been the depreciation in the market value of the lot by reason of the construction and proper operation of the railway in the street in front of the property for all time; (3) that this depreciation in value would have been the difference in the market value of the lot immediately before and immediately after the construction of the railway; (4) that in ascertaining such depreciation the cuts or fills made in the street in front of the property, the proximity of the track to the front of the lot,

the danger of fire from passing trains, the probability of damage to the house on the lot from jars caused by passing cars and engines, the inconvenience to the occupants of the property arising from the presence and proper and ordinary use of the railway track for all time, the annoyance to such occupants from smoke, cinders, and dust from passing trains and engines, the annoyance caused by the roar of trains, the sounding of whistles and the ringing of bells, and every other fact and circumstance that would have influenced the market value of the property in the mind of a good-faith intending purchaser thereof, would have all been proper elements for consideration in determining the damages to plaintiff's property; (5) that all such elements of damage would have been included in the appraisement, judgment, or settlement made on account of the original construction of the railway in the street; and such elements, nor any of them, could not be made the subject of an action for damages brought by the owner of the property against the railway company more than four years after the date of the original construction of the railway in the street; (6) that the side tracks constructed by the railway company subsequently to the original building of its railway in the street were presumably within the purview of the original location of the railway and did not constitute an additional burden to plaintiff's property, and that its building could not be made the basis of a separate and independent action for damages by the property owner against the railway company; (7) that the coal house and hoisting apparatus erected by the railway company in the street in front of plaintiff's property were presumably not within the purview of the original location of the railroad, and constituted additional burdens to plaintiff's property, and invested him with a right of action against the railway company for damages to his property caused thereby; (8) that plaintiff's right of action against the railway company for damages caused to his property by the erection of such coal house and hoisting apparatus was barred in four years from the date of their construction in the street; (9) that the measure of the plaintiff's damages was the depreciation in the market value of his real estate caused by the location of the coal house and hoisting apparatus, and their ordinary and proper use for all time; (10) that, in arriving at the amount of such depreciation of plaintiff's property, the proximity of the coal house and hoisting apparatus to the property, the capacity of the coal house, the danger from fire, the annoyance from soot, smoke, and coal dust, the probability of damage to the house on the lot from the jars of passing trains and engines, were all competent and proper elements for consideration, as all these things were

within the realm of results that would naturally flow from the proper and ordinary use of the coal house and hoisting apparatus, and were involved in and a part of the damages which plaintiff could have recovered on account of the original construction of the coal house and hoisting apparatus; and these elements, nor any of them, could not be made the subject of an independent suit by plaintiff against the railway company brought more than four years after the date of the original construction of the coal house and hoisting apparatus.

2. ——: ——: ADDITIONAL BURDENS. Where a railway company condemns real estate for the erection thereon of a railway, and builds one track thereon, and there is subsequently built by said railway company one or more extra tracks on the same right of way, and on the original profile or grade, such extra tracks are not additional burdens to adjoining property and cannot be made the subject of an action for damages alleged to be caused to such property by their construction; such extra tracks are presumably within the purview and purposes of the original condemnation.

ERROR from the district court of Cass county. Tried below before CHAPMAN, J.

The opinion contains a statement of the case.

*Marquett & Deweese* and *John H. Ames,* for plaintiff in error, cited : General Statutes, 1873, sec. 83; Consolidated Statutes, sec. 508; *Merchants Union Barb Wire Co. v. Chicago, R. I. & P. R. Co.,* 70 Ia., 105; *Butler v. City of Passaic,* 44 N. J. Law, 171; *City of Quincy v. Chicago, B. & Q. R. Co.,* 92 Ill., 21; *Burlington & M. R. R. Co. v. Reinhackle,* 15 Neb., 279; *Blakeley v. Chicago, K. & N. R. Co.,* 25 Neb., 207; *City of Omaha v. Kramer,* 25 Neb., 489; *Chicago, K. & N. R. Co. v. Hazels,* 26 Neb., 365; *Omaha & N. P. R. Co. v. Janecek,* 30 Neb., 276; *Dana v. Valentine,* 5 Met. [Mass.], 8; Wood, Nuisances, sec. 709; *Meyer v. City of Lincoln,* 33 Neb., 566; *Pomeroy v. Chicago & M. R. Co.,* 25 Wis., 641; *Kutz v. McCune,* 22 Wis., 628; *Rand v. Townshend,* 26 Vt., 670; *Lewis v. Wilmington & M. R. Co.,* 11 Richardson [S. Car.], 91;

*Central R. Co. v. Merkel,* 32 Tex., 723; *Drury v. Midland R. Co.,* 127 Mass., 571; Rorer, Railroads, pp. 418–421.

*Byron Clark,* also for plaintiff in error.

*Matthew Gering, contra:*

Whatever is injurious to health, offensive to the sense, or obstructs the free use of property so as to interfere with the enjoyment thereof by the owner is a nuisance. (*State v. Taylor,* 29 Ind., 517; *Norcross v. Thoms,* 51 Me., 503.)

Even though the railroad company conducted its business in a careful manner, it is liable in damages resulting from the use of its property where the defendant in error has been disturbed in his property rights and his rental values have been reduced. (*People v. Detroit White Lead Works,* 9 L. R. A. [Mich.], 722; *Wiley v. Elwood,* 9 L. R. A. [Ill.], 726; Field, Damages, sec. 748; *McKeon v. See,* 51 N. Y., 300; *Drake v. Chicago, R. I. & P. R. Co.,* 19 N. W. Rep. [Ia.], 215; *Cain v. Chicago, R. I. & P. R. Co.,* 3 N. W. Rep. [Ia.], 736.)

Where houses are jarred and other injuries result from the running of trains over the tracks and from loading and unloading cars and engines, the company is liable. (6 Lawson, Rights, Remedies & Practice, sec. 3003; *Robinson v. Baugh,* 31 Mich., 290; *Wesson v. Washburn Iron Co.,* 13 Allen [Mass.], 95; *Whitney v. Bartholomew,* 21 Conn., 213; *Demarest v. Hardham,* 34 N. J. Eq., 469; *Cooper v. Randall,* 53 Ill., 24; *Dittman v. Repp,* 50 Md., 516; *Yocum v. Hotel St. George,* 18 Abb. N. Cas. [N. Y.], 340; *Tuebner v. California S. R. Co.,* 66 Cal., 171.)

Permitting the nuisance to exist without protest for a longer period than the statute of limitations will not bar an action for damages. (*Goodall v. Crofton,* 33 O. St., 271; *Adams v. Chicago, B. & N. R. Co.,* 39 Minn., 286; *Lamm v. Chicago, St. P., M. & O. R. Co.,* 10 L. R. A. [Minn.], 268.)

The following authorities are cited on the question of nuisance by use of the street, and on the measure of damages: *Carhart v. Auburn Gas Light Co.*, 22 Barb. [N. Y.], 297; *Grigsby v. Clear Lake Water-Works Co.*, 40 Cal., 396; *Vanard v. Cross*, 8 Kan., 248; *Omaha & R. V. R. Co. v. Standen*, 22 Neb., 343; *Drake v. Chicago, R. I. & P. R. Co.*, 19 N. W. Rep. [Ia.], 215; *Staple v. Spring*, 10 Mass., 73; *Blesch v. Chicago & N. W. R. Co.*, 43 Wis., 183; *Carl v. Sheboygan & F. D. L. R. Co.*, 1 N. W. Rep. [Wis.], 235; *Thayer v. Brooks*, 17 O., 489.

*Beeson & Root*, also for defendant in error.

RAGAN, C.

On the 5th day of May, 1890, Cornelius O'Connor sued the Chicago, Burlington & Quincy Railway Company (hereinafter called the "Railway Company") in the district court of Cass county for damages, alleging that he was the owner of lot 13, in block 48, in the city of Plattsmouth; that said lot and the house thereon were used by him for residence purposes, and that said lot fronted west on Second street, a public thoroughfare of said city. The three material allegations in the petition were as follows:

"(6.) And plaintiff avers and complains that said defendant did, on or about the 3d day of July, 1886, by its agents and employes, well knowing the premises herein, and without any authority whatever from, or compensation to, plaintiff, and without any authority from any person or corporate body legally authorized to grant such authority, erect and maintain a switch track in such public thoroughfare, a fence of the height of about six feet immediately in front of said lot, and did so erect and maintain, and still maintains and uses constantly and daily, a coal shed and hoisting machine, and also did build, construct, and maintain, and so continues to do so, a side or switch track immediately in front of said lot, by reason of which said lot

is totally obstructed from view, and this plaintiff has for five years last past and is now daily prevented from using or enjoying said street upon which said track, switches, coal houses, fence, and other obstructions have been wrongfully placed by the defendant.

"(7.) That since the 3d day of July, 1886, and long prior thereto, the defendants herein, by their agents and employes, have wrongfully, and to the great damage of plaintiff's property and enjoyment thereof, permitted their car rolling stock to be loaded and unloaded with coal on said switch tracks, which is immediately in front of and abuts on said residence property, and that said defendant now and since said time constantly permits its cars and rolling stock, trains, and locomotive engines to so obstruct the passage of said public thoroughfare and street as to completely isolate the plaintiff from the enjoyment thereof, and further compelling said plaintiff, in order to have free ingress and egress to Granite street, to use for a sidewalk his own property.

" (8.) That during all of said time hereinbefore mentioned the said defendant, by its agents, servants, and employes, has permitted, and does now permit, its locomotive engines to whistle and ring bells at all hours of the night and day, to the great annoyance and damage of plaintiff's property and the enjoyment thereof; and further, that by reason and as an immediate consequence of so permitting its heavy and ponderous engines and cars to run over said switch to jar and shake the said dwelling house, unfitting it for the purpose for which it was built, and thereby damaging the walls and plaster, necessitating constant repairing.

"(9.) And plaintiff further avers that said defendant, without any authority from, or compensation to, plaintiff, has caused to be laid across said property a water pipe, and in making excavations therefor tore down and ruined part of plaintiff's fence and otherwise damaging said premises, and that it is now and has been in the habit of throw-

ing the dirt and rubbish adjacent to and upon said premises, to the damage thereof, making the same by reason thereof nearly useless for a dwelling house."

The answer of the Railway Company, among other defenses, pleaded the statute of limitations; that is, that O'Connor's cause of action did not accrue within four years immediately preceding the date of the bringing of the suit. O'Connor had a verdict and judgment and the Railway Company prosecutes error.

The evidence in the record tends to establish the following facts: That O'Connor became the owner of the property in the year 1885; that on this lot was a house sometimes used by O'Connor for a residence and sometimes rented by him to tenants, and that this lot fronted west on Second street, the same being one of the public streets of the city of Plattsmouth; that prior to the year 1877 the Railway Company laid its railway track in said street in front of the O'Connor property and had since been operating its trains on said track; that in the year 1877, 1878, or 1879 the Railway Company erected a coal house in Second street in front of the O'Connor property, and has since maintained said coal house at said place; that in the year 1886 said coal house was partially destroyed by fire, but was at once rebuilt; that said coal house had a capacity of 40,000 tons; that the Railway Company built two side tracks in Second street so as to reach said coal house from its main track,—one of these side tracks was built more than four years before this suit was brought, and one was built within four years of the bringing of this suit; that the cars loaded with coal were run upon these side tracks and the coal unloaded into the coal house by means of a derrick or hoisting machine; that engines were run up on these side tracks to the coal house and stood there while the tenders were being loaded with coal; that the loading of coal into the coal house and loading it from the coal house into the engines caused dust to ensue and settle on the O'Connor

property and house standing thereon, to the annoyance of the occupants; that the movement of the engines and cars on the side tracks shook and jarred the house on the O'Connor lot and injured the foundation, plastering, and walls thereof; that the smoke and soot from the locomotive engines standing on the side track for the purpose of being loaded with coal, drifted on the O'Connor property and into the house thereon and rendered its occupation uncomfortable. All of which things depreciated the rental value of the O'Connor property. The evidence further tends to show that within the four years prior to the bringing of this suit the Railway Company laid a water pipe across a part of the O'Connor lot and built a fence between the front of the lot and its coal house, which obstructed O'Connor's ingress and egress to and from his lot to the street.

The court charged the jury, among other things, as follows: "If you shall further find from the evidence that the defendants have caused to be erected on said street, in front of plaintiff's said property, a coal house where coal is unloaded from cars to said coal house and from said coal house into tenders of defendant's engines, and by reason thereof great, unusual, and annoying noises are created, and smoke, dust, and cinders and ashes from the engines of the defendant standing by said coal house, are cast upon and across plaintiff's said premises to such an extent as to interfere with the comfortable enjoyment and use of said premises, or depreciate the rental value thereof, then you should find for the plaintiff and assess his damages, if you find from the evidence that plaintiff has been so damaged, at such a sum as you believe from the evidence will fully compensate him for such injury to said property for a period not to exceed four years prior to May 5, 1890. In other words, gentlemen of the jury, if defendant constructed the railway tracks complained of more than four years prior to May 5, 1890, plaintiff cannot recover in this

action for the construction of such tracks, nor for any damages caused to his property by reason of the trains and engines passing and repassing his said property, but in that event he can recover in this action for damages to said property resulting from other and different uses of such tracks, such as for the purpose of storing cars and engines, annoying noises caused by the loading and unloading of coal in and out of the defendant's coal house, smoke, dust, and cinders cast upon and across his said premises by the engines stationary on said tracks, if you find these facts from the evidence, and the measure of his damages in such case would be such a sum as you may find from the evidence will fully compensate plaintiff for any diminution of the rents and profits of said property during and not to exceed four years prior to May 5, 1890, if you find from the evidence that by reason of said acts any diminution in the rental value of said property has accrued in said time." It is now urged by the Railway Company that this instruction was erroneous, because it prescribed an improper measure of damages and misstated the law as to the statute of limitations.

The *Omaha S. R. Co. v. Todd*, 39 Neb., 818, was an action by a land owner against a railway company to recover damages for the amount of land appropriated by the railway company for a right of way and for the amount of damages sustained by the land owner to the remainder of his farm by reason of the appropriation of a part thereof, and it was held that the damages to which a land owner is entitled by reason of the construction of a railway across his farm are: (1) The actual value of the land taken at the time of the taking, without diminution on account of any benefit, or any set-off whatever. (2) The depreciation in value of the remainder of the farm, caused by the appropriation of a part thereof for railway purposes, and the construction and permanent operation and occupation of the railroad thereon, excluding general benefits; and that

in an inquiry whether, and how much, the part of a farm
not taken for a railroad right of way is depreciated in
value by the appropriation of a part, evidence as to the size
of the farm, the purpose for which it was used, the im-
provements thereon, and how located, the construction of
the road across the farm, the cuts and fills made or to be
made in the construction of the road, the width of the
right of way, the height of embankments, the depth of
ditches, the inconvenience of crossing the tracks from one
part of the farm to another, the liability of stock being
killed, the danger from fire from passing trains, were all
facts competent for the jury's consideration in determining
the depreciation in value of the remainder of the farm.
To the same effect see *Fremont, E. & M. V. R. Co. v. Bates,*
40 Neb., 381.

In *Omaha & R. V. R. Co. v. Moschel,* 38 Neb., 281, it
was held: "An action against a railroad company for dam-
ages to plaintiff's real estate caused by the railroad com-
pany's building its tracks and operating its road across the
street and on a lot lying next to plaintiff's property must
be brought within four years of the date of the construc-
tion of such railroad." "Where a railroad company, in
1880, built its railroad track and side tracks across a street
and on a lot (owned by it) lying next to plaintiff's prop-
erty, and more than four years thereafter plaintiff brought
suit against the railroad company for the depreciation in
value of his lot caused by the building of such railroad,
and its subsequent operation, and for subsequently building
and operating additional tracks across said street and lot,
held, (1) that plaintiff in no event could recover for any
depreciation in the value of his property by reason of any
acts of the railroad company, either in matters of construc-
tion or operation, the habitual doing, or the commencement
of the doing, of which acts was at a date more than four
years prior to the date of suit brought; (2) that the plaint-
iff could, and if he did or did not, within four years after

the date of building of said original railroad on said lot and across said street adjacent to his property, bring suit for damages for the depreciation in value of his premises, caused by such railroad construction and operation, then every element of damages, past and future, that was or would have been properly admissible in that suit, either in matters of construction or operation, must be excluded from the consideration in this case."

Now applying the principles enunciated in the foregoing cases to the case at bar, it is quite clear that at the time the Railway Company first laid its tracks in Second street in front of the O'Connor property there at once accrued to the owner thereof, if he was thereby damaged, a right of action against the Railway Company. This right of action would have been barred within four years from the date of the Railway Company's occupation of the street. If the owner of the O'Connor property had brought such action, the measure of his damages would have been the depreciation in the market value of the lot by reason of the occupation of the street in front thereof by the Railway Company, and this depreciation in value would have been the difference between the market value of the lot immediately before and immediately after the construction of the railway; and in ascertaining this depreciation, the cuts or fills made in the street in front of the property; the proximity of the track to the front of the lot; the danger of fire from passing trains; the probability of damage to the house on the lot from the jars of passing cars and engines; the inconvenience to the occupants of the property by the presence and proper and ordinary use of the railway track; the annoyance from smoke, cinders, and dust from passing trains and engines; the noises from the proper operation of the road, such as the roar of trains, the sounding of whistles, and the ringing of bells, would have all been elements for consideration in determining how much the occupation of the street by the railway had diminished

the value of the O'Connor property. In other words, every fact and circumstance connected with the usual and proper operation of the road in front thereof for all time that would have influenced the market value of the property in the mind of a good-faith intending purchaser thereof would have been proper for consideration; but all elements of damages which would or might ensue to the O'Connor property by reason of the building in front thereof of the railway and its continuous and proper operation would have been included in the appraisement, judgment, or settlement of the damages, and the reason for this is, that it is a matter of common knowledge that a railway cannot be operated without noise and smoke and soot, nor can heavy cars and engines be propelled over iron tracks without jarring buildings in close proximity thereto. All these things were within the realm of what would probably result from the proper and ordinary operation of the railway as first constructed, and entered into and formed a part of the damages which the O'Connor property sustained by reason of the location and use of the railway in the street. But if, after the Railway Company had laid its tracks in Second street, and after the damages caused thereby to the O'Connor property had accrued and been adjudicated or settled, it had built an embankment in the street in front of the O'Connor property, or had made a cut in said street in front thereof for the use of its railway tracks, then the building of such embankment, or the making of such cut, would have been an additional burden to the O'Connor property presumably not within the purview of the original location of the railroad; and had it produced an injury to the O'Connor property, it would have invested the owner thereof with an additional right of action therefor. This right of action would likewise have been barred within four years from the time of building such embankment or making such cut, and the measure of damages to the owner of the O'Connor property would have been ascer-

tained in the same manner as his damages for the original location of the road.

The erection and use of the coal house in the street in front of the O'Connor property in 1878 or 1879 was an additional burden thereto, and invested the then owner of said property with a right of action for damages against the Railway Company by reason thereof. That right of action was barred within four years from that date. And the measure of damages to the owner of the O'Connor property by reason of the erection of said coal house and its use was the depreciation caused by reason of the erection of the coal house and its original and proper use for all time; and in arriving at the amount of this depreciation or damage, the proximity of the coal house to the property, the capacity of the coal house, the danger from fire, the annoyance from soot and smoke and coal dust, the probable damage to the house on the property from the jars caused by passing trains and engines, were all competent and proper elements for consideration. All these things were within the realm of results that would naturally flow from the proper and ordinary use of the coal house, and were involved in and a part of the damages sustained by the O'Connor property by reason of the location and use of the coal house. Coal could not be loaded into nor out of said coal house without making a dust. The coal could not be brought to the coal house except on cars pulled by engines. These engines could not be present at the coal house, either for the purpose of hauling coal there or for taking on a supply of coal, without the usual accompaniments of smoke, steam, cinders, the ringing of bells, and the sounding of whistles. We conclude, therefore, that where the owner of a lot fronting on a street sues a railway company for damages to his lot by reason of the erection and use in said street in front thereof of a coal house, the owner's measure of damages is the depreciation in the market value of his real estate caused by the erec-

tion and proper and ordinary use of the coal house for all time. No doubt that in an inquiry as to the amount of such damages the depreciation in the rental value of the premises might be shown, as that would tend to show the amount of depreciation that the property had suffered. And we further conclude that such owner's right of action accrues upon the location of the coal house or other improvement, of which he complains, in the street, and is barred within four years therefrom; and that in such right of action are embraced all things effecting his property which result from the ordinary and proper use of the improvement complained of. We conclude, therefore, that the learned judge of the district court erred in giving the instruction complained of.

There remain in the case a few points for disposition. As already stated, the evidence shows that within four years prior to the bringing of this suit the Railway Company constructed in the street opposite the O'Connor property an additional side track for use in connection with its coal house. This did not confer upon O'Connor any cause of action against the Railway Company. If a railway company condemns real estate for the erection thereon of a road, and builds one track thereon, then we are of opinion that the building of one or more additional tracks on the same right of way and on the same profile or grade, should be construed to be within the purview and purposes of the original condemnation; but, as already stated, the evidence tends to show that the Railway Company, within four years of the suit brought, laid a water pipe across the O'Connor lot and built a fence between the front of it and its coal house and the street. The building of this fence and the laying of this water pipe were not elements that might have been considered in determining O'Connor's damage to his property by reason of the original location of the coal house in the street in front thereof. They were not things that would naturally or probably result from the proper and

ordinary use of the coal house, and if O'Connor's property has been depreciated in value by reason of the erection and maintaining of said fence and the location of said water pipe, he is entitled to recover such damages.

The judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.