JOHN BAUM, APPELLEE, V. THE COUNTY OF SCOTTS BLUFF,
A CORPORATION, ET AL., APPELLANTS.

101 N. W. 2d 455

Filed February 26, 1960.   No. 34705.

W. H. *Kirwin* and *Wright, Simmons & Harris,* for appellants.

*Holtorf & Hansen* and *Charles F. Fitzke,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

Plaintiff brought this action against the County of Scotts Bluff and the Gering-Fort Laramie Irrigation District to recover damages to growing crops and personal property in the amount of $6,422.42 alleged to have resulted from floodwaters caused by a structure jointly constructed by the defendants in the district's drainage ditch. The jury returned a verdict for plaintiff in the amount of $3,853.45 and the defendants appealed.

Plaintiff was a tenant farmer on the southeast quarter of Section 21, Township 21 North, Range 55 West of the Sixth P. M., in Scotts Bluff County, which we shall hereafter refer to as plaintiff's land. A county road ran east and west along the south line of plaintiff's farm. A little east of the center of plaintiff's south line, the district's drainage ditch crossed to the north under a county bridge on the highway onto plaintiff's land, continued in a diagonal course to the northeast to about the center of plaintiff's east line, and then continued in a northerly direction. The ditch was crossed by a beet spur railroad track approximately 100 feet north of the highway bridge. In 1957 the county and district jointly constructed a single row of steel sheet piling across the ditch about 50 feet north of the highway bridge. The purpose of the district in assisting in the building of this structure was to stop the ditch from washing wider and deeper by retarding its flow. The purpose of the county in assisting in its construction was to prevent the washing out of the approach to the east end of the highway bridge. The structure was 15 feet high and about 60 feet in width. In the center

of the structure an opening 12 feet by 7 feet was left for the passage of the water carried by the ditch. The lip of the opening was at the old ground level of the ditch but when constructed it was 2 or 3 feet above the bottom of the existing ditch, and at the time of the flood on June 1, 1958, the lip of the opening was about 6 feet above the bottom of the ditch.

The ditch provided drainage for an area of about 5,000 acres of land lying to the south and west of plaintiff's land. Two main drainage channels carried the water to a point near the southwest corner of plaintiff's land where it turned east and paralleled the county highway to the highway bridge where it turned abruptly to the north under the highway bridge, through the steel structure, under the railroad bridge, and through plaintiff's land to the northeast as heretofore related.

The east channel comes out of the Wildcat Range of hills about 2 miles south of the southeast corner of plaintiff's land. It then goes north for a mile, turns west for 2,000 feet, turns north for a mile, and then turns east along the south side of the county highway. Approximately 2 miles south of plaintiff's land on the east channel is a dam creating a storage reservoir with a maximum capacity of 50.7 acre-feet. The west channel comes out of the hills about 1½ miles west of the east channel. It follows a northeasterly course to the county highway south of the southwest corner of plaintiff's land, where it turns east about 640 feet along the highway and at that point flows into the east channel.

About 5:30 p.m., on the afternoon of June 1, 1958, a heavy rainfall occurred in this area. Plaintiff testified that 1¾ inches of rain fell on this occasion. Other witnesses testified to varying amounts of rainfall between 1.4 inches and 5 inches.

The evidence of plaintiff and his witnesses is that the water came out of the banks of the ditch immediately above the steel structure and flooded out over plaintiff's land on both sides. Their evidence is that

the water destroyed and damaged the growing crops along the west side of the ditch and damaged the alfalfa growing on the east side thereof. The evidence shows also that the water ran into the yard and corrals around the buildings, covering the same with debris and silt. Plaintiff testified that he had 140 head of cattle in his feed lots that were damaged by standing in more than 2 feet of floodwater for approximately 4½ hours. There is evidence that two trees were carried into the steel structure where they lodged in the opening and retarded the flow of water through it. Three witnesses testified that they saw the water flowing out of the ditch immediately above the steel structure and onto plaintiff's land.

· The engineer who constructed the steel structure for the defendants testified generally as to the size, nature, and purpose of the steel structure about which there is little dispute. He testified concerning the area within the watershed of the ditch, the directional flow of surface waters, and the effect of voluminous surface waters as they would affect the ditch and plaintiff's land. It was the opinion of this witness, based on elevations taken, the amount of surface water involved, his knowledge of the drainage channels in the area, and his expert knowledge in irrigation and drainage engineering, that the water causing plaintiff's damage came from sources wholly disconnected from the steel structure in the ditch. His testimony is that waters flowed out of the ditch west of the county highway bridge, flowed over the highway and railroad tracks onto plaintiff's land, causing the damage to plaintiff's land to the west of the ditch about which he complains. He testified that the waters from the hill area in the drainage area of the east channel flowed north for 1 mile to the point where the east channel turned west and there spilled out of the channel. These waters flowed north and east. Part of the water went east in the south borrow pit of the highway. The other part crossed the highway and rail-

road tracks onto plaintiff's land to the east of the ditch and caused the damage to the crops, livestock, and other personal property located on the east side of the ditch. He stated that the steel structure did not cause or contribute to any of the damages for which the action was brought.

On June 8, 1958, at about 5:30 p. m., a second storm struck the same area. Plaintiff testified that 2¼ inches of rain fell on this occasion in a matter of 40 minutes. Other witnesses testified to varying amounts of rainfall between 2½ inches and 7 inches. Plaintiff testified that his crops, yard, and corrals were flooded as before and the floodwaters did no, or little, additional damage. Defendants contend that the second rain caused the damage and that the steel structure made no contribution to it.

The evidence shows that the reservoir in the foothills on the east channel broke after the second rain and loosed its storage water into the drainage area. There is evidence that the dam did not wash out until 9 p. m. on the day of the second rain. According to plaintiff's evidence this was approximately 3 hours after the high watermark of the flood that caused the damage. There is no evidence in the record that the breaking of the resorvoir contributed to the floodwaters which damaged the plaintiff.

The evidence is in conflict as to whether or not the steel structure caused the damages for which the plaintiff seeks recovery. Three witnesses testified that they saw the water leave the ditch at the structure and flow onto plaintiff's lands. The engineer testified that the water doing the damage came from other sources and that the structure did not cause any water to overflow onto plaintiff's farm land. This issue is clearly one for the jury.

The Gering-Fort Laramie Irrigation District is a governmental subdivision organized to furnish irrigation water to privately owned lands within the district and to

provide drainage for such lands resulting from seepage and surface waters. It is clearly organized for a public purpose. The county of Scotts Bluff is likewise a governmental subdivision charged with the statutory duty of building and maintaining highways and bridges for public use. In so doing it is engaged in carrying out a public purpose. The plaintiff contends that these defendants are liable for damages caused by them in carrying out the public purposes for which they were organized, without proof of negligence, under the provisions of Article I, section 21, of the Constitution. This section provides: "The property of no person shall be taken or damaged for public use without just compensation therefor." The trial court instructed the jury on the theory that if the damages resulted from the construction of the steel structure placed in the district's drainage ditch by the defendants, negligence need not be shown. The defendants contend this was error.

The case is controlled in principle by Gledhill v. State, 123 Neb. 726, 243 N. W. 909. In that case a bridge over a drainage ditch washed out. The state erected a temporary bridge for the convenience of the public. A thaw caused the ice in the drainage ditch to break up. The ice moved downstream and lodged against the piling of the temporary bridge. The ice jam held back the flow of water above the bridge and flooded the land for which the plaintiff claimed damage. This court held that the damaging was a taking for a public use within the meaning of Article I, section 21, of the Constitution. In that case we quoted Douglas County v. Taylor, 50 Neb. 535, 70 N. W. 27, with approval in holding "that it was immaterial what technical name might be given to Taylor's action; for whether his petition stated a cause of action ex delicto or ex contractu, the averments thereof, if true, established the fact that his property had been taken and damaged for public use, and that by virtue of section 21 of the Bill of Rights (Const. art. I, sec. 21) he was entitled to compensation therefor."

The foregoing rule has been adhered to by this court as late as Patrick v. City of Bellevue, 164 Neb. 196, 82 N. W. 2d 274. See, also, Scully v. Central Nebraska Public Power & Irr. Dist., 143 Neb. 184, 9 N. W. 2d 207; Snyder v. Platte Valley Public Power & Irr. Dist., 144 Neb. 308, 13 N. W. 2d 160, 160 A. L. R. 1154. The rule is: One whose property is damaged by the construction of a public improvement by the state or a subdivision thereof, has been damaged for a public use within the meaning of Article I, section 21, of the Constitution. Negligence is not a necessary element to be proved in maintaining an action for such damage.

The defendant county assigns as error the failure of the trial court to instruct the jury on the duty of the county to repair and maintain its roads and bridges, and its right to protect the same from erosion by floods. The trial court did not err in failing to so instruct. Whatever the duty of the county may be in this respect it is liable for any damages it may cause to private property in so doing. The extent of its duty is not material.

The defendants contend that the trial court erred in giving instruction No. 8. The portion of the instruction objected to states: "That the opening in the structure placed in the drainage ditch by the defendants was too small to carry the water and debris that could reasonably be expected to flow in said ditch." In this connection it is common knowledge that floodwaters carry sediment and debris. The tendency of drainage ditches to scour and widen is common knowledge. The tendency of such ditches to slough their banks and to cause brush and trees to slide into the ditches is well known. It follows that those who build structures across or in drainage ditches are charged with a duty to provide for the passage of all waters, ice, and debris which may reasonably be anticipated to flow or be carried through such ditches. The measure of the duty is a rule of reasonableness. Since the case of Omaha & Republican

Valley R. R. v. Brown, 16 Neb. 161, 20 N. W. 202, decided in 1884, the foregoing rule appears to have been the law of this state. In that case we concluded that where there was sufficient evidence tending to prove that the openings between the piers of a railroad bridge were not sufficient to permit the free passage of such quantities of ice and water as might reasonably be expected to occur, the verdict of the jury would be permitted to stand. We fail to see any difference in principle where one fails to reasonably anticipate the flow of ice in a stream during a spring thaw and the carrying of debris in a drainage ditch during heavy run-offs of surface waters. It is only where the flow of water and debris is so great as to amount to an act of God that liability does not attach in such a case as we have here. We find no error in instruction No. 8 given by the trial court.

The defendants contend that instruction No. 10 was prejudicial to their rights. The portion of the instruction that is assigned as error states: "The defendants deny this contention on the part of the plaintiff and affirmatively allege that the damage to the plaintiff's land was caused either by an act of God, as defined elsewhere in these instructions, or was caused by other waters running upon the plaintiff's land which were never in the ditch and for which the defendants were never responsible, or both." It is asserted that the jury was misled by this instruction in that water that once was in the drainage ditch was claimed by defendants to have escaped therefrom and to have crossed the highway and railroad tracks onto plaintiff's land both to the east and to the west of the highway bridge without reaching the steel structure. It is clear that the instruction was intended to refer to the ditch immediately above the structure of which complaint is made. We do not think the jury was misled by this instruction. The contentions of the parties were carefully pointed out to the jury on a large plat of the area. The county's

engineer pointed out where the waters left the ditch and crossed the highway and railroad tracks. In addition thereto, the jury was told in instruction No. 8 that the plaintiff had the burden of proving that the damages sustained were proximately caused by the opening in the structure being too small. Considering the instructions as a whole, and the clarity of the testimony on the issues presented, we do not feel that the jury could have been misled by the language of the instruction. The instruction was not prejudicially erroneous.

The defendants assign as error the giving of instruction No. 12. By this instruction the trial court placed the burden of proof upon the defendants to establish that plaintiff's damages resulted from water from a source other than that claimed by the plaintiff and for which the defendants were in no way responsible.

The burden of proof is on the plaintiff in this case to show that the waters causing the damages for which he claims compensation came out of the drainage ditch onto his lands because of the structure placed in the ditch by the defendants. The trial court properly instructed the jury on this point. The defendants pleaded in their answers that the waters causing plaintiff's damage came onto plaintiff's lands from other sources than the drainage ditch at or near the structure and that the structure in no way affected the waters causing plaintiff's damage. This is a defense that could properly be asserted under a general denial. The plaintiff has the burden of proof to show that the structure caused the damage and the evidence is sufficient to sustain a verdict for the plaintiff in that respect. While the defendants have the burden of going forward with evidence thereafter to show that the waters causing the damages came from an independent source, the burden of proof is not upon them to establish such fact. This evidence merely disputes an issue of fact upon which the plaintiff has the burden of proof. The burden of proof remains with the plaintiff to show that the structure caused the

waters to overflow his lands and caused the damage of which complaint is made. It was prejudicial error for the trial court to instruct otherwise. It seems clear to us that it is incumbent on the plaintiff to show that his damages would not have been suffered if it were not for the structure erected by the defendants. Any instruction which would relieve the plaintiff of this burden and cast it upon the defendants would necessarily impose on the defendants a quantum of proof that rests only with the plaintiff throughout the trial. The burden of proof imposed on the plaintiff in this case to establish the necessary elements of his cause of action does not shift to the defendants merely because they plead facts that could properly be shown under a general denial. It is only the burden of going forward with the evidence that shifts after the plaintiff has made a case sufficient to go to the jury.

The plaintiff relies on City of McCook v McAdams, on second rehearing, 76 Neb. 11, 114 N. W. 596; Snyder v. Farmers Irr. Dist., 157 Neb. 771, 61 N. W. 2d 557, and similar cases. We point out that these cases involved the defense of an act of God. While the language of the McAdams case appears broad enough to lend some force to plaintiff's contention that the burden of proof is on the defendants to show that the offending waters came from a source wholly independent of the structure in the ditch, a careful reading discloses that the language employed therein related to the affirmative defense of an act of God. If it did not so relate itself, it is obiter dictum which does not meet the approval of this court.

We conclude that instruction No. 12 was prejudicially erroneous in that it improperly placed the burden of proof on the defendants to establish that the waters causing plaintiff's damage were from an outside source and wholly unaffected by the structure erected by the defendants in the ditch.

Defendants assign as error the giving of instruction

No. 13 in that it failed to state the evidence showed that two trees lodged in the opening in the structure during the first rain storm. The instruction in this respect stated: "In this case evidence has been introduced tending to show that two trees were lodged in the structure during the storm of June 1, 1958, causing the overflow and damage therefrom." No contention is made that the trial court did not instruct properly as to the legal effect of the lodging of the trees in the opening in the structure. We do not think there is any merit in this assignment or, in any event, that it in any manner prejudiced the rights of the defendants.

Error is assigned to the giving of instruction No. 18, which set out the measure of damages to be applied in determining the damages sustained by plaintiff's cattle in the flood of June 1, 1958. The evidence shows that plaintiff had 140 head of cattle on feed at the time of the flood alleged to have been caused by the structure placed in the drainage ditch by the defendants. Plaintiff testified that 56 head of cattle would have been ready for market and shipped before the June 8, 1958, flood. The evidence does not establish that the second flood was caused by defendant's structure in the drain ditch. The trial court directed, and properly we think, that plaintiff could not recover damages to his cattle, other than the 56 head, for the reason that plaintiff did not segregate the damages resulting from the two floods. As to the 56 head of cattle, the trial court instructed the jury that if it found that the 56 head would have been sold before the date of the second flood, except for the occurrence of the first flood for which the defendants were liable, then the measure of damages to the 56 head of cattle would be the amount of additional expense to which plaintiff was put as a result of both floods in placing the cattle in the condition they were in at the time of the first flood.

The plaintiff testified that the market value of the cattle at the time of the first flood was $26 per hundred-

weight. Their weight was estimated by the plaintiff to be 825 pounds per head. Plaintiff testified that it required 24 days to put the cattle in the same condition as before the first flood and that it cost him 35 cents per head per day to do so. Plaintiff also testified that he sold the 56 head for $26 per hundredweight. This evidence of damage was received in evidence without objection on the part of either of the defendants. No other evidence as to the damage to the cattle appears in the record.

It is the contention of the defendants that the proper measure of damages to these cattle is the difference in the fair and reasonable value of the cattle immediately before and immediately after the flood, and that the instruction given was prejudicially erroneous. The general rule is undoubtedly as stated by the defendants. The case was tried on the theory that the expenses incurred in putting the cattle in the same condition as before the first flood constituted the proper measure of damages. The evidence of the plaintiff was on this theory. The defendants made no objection to the offered evidence and evidently were willing to submit the matter on this basis, which the trial court did. We do not think the defendants are now in position to assert that the instruction of the trial court as to the measure of damages was prejudicially erroneous.

The rule is: Where a certain theory as to the measure of damages is relied upon by the parties to the trial as the proper one, it will be adhered to on appeal whether it is correct or not. Behle v. Loup River Public Power Dist., 138 Neb. 566, 293 N. W. 413; Welch v. Reeves, 142 Neb. 171, 5 N. W. 2d 275; Gillan v. Equitable Life Assurance Society, 143 Neb. 647, 10 N. W. 2d 693, 148 A. L. R. 496. The instruction given is consistent with plaintiff's evidence of damages to which no objection was made by the defendants. The verdict is sustained by evidence. No contention is here made that the verdict is excessive. It is not error for the trial court to

instruct on the measure of damages adopted by the parties to the action, even though it be incorrect.

In view of the result we have reached we do not deem it necessary to discuss other assignments of error which will not in all probability arise on the retrial of the case. The judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.