WILLIAM DEITLOFF ET AL., APPELLEES, V. CITY OF NORFOLK, APPELLANT.

163 N. W. 2d 586

Filed December 20, 1968. No. 36947.

Jewell & Otte, for appellant.

McFadden & Kirby, for appellees.

Heard before WHITE, C. J., BOSLAUGH, SMITH, and McCOWN, JJ., and HUBKA, ACH, and GARROTTO, District Judges.

GARROTTO, District Judge.

This is an action of reverse condemnation for the damage caused to the property of the plaintiffs-appellees, hereinafter referred to as plaintiffs, by construction of a large earthen flood control dam or dike about 13 feet in height which was constructed adjacent to the land of

the plaintiffs by defendant-appellant City of Norfolk, hereinafter referred to as defendant.

Plaintiffs are the owners of a 2-acre tract of land about 2 miles north of Norfolk, in Madison County, Nebraska, upon which property there are a modern three bedroom home and a modern two bedroom home. The defendant built a dam or dike across the road from plaintiffs' property for flood control purposes leaving plaintiffs' property between the dike and the North Fork River. Appeal was taken from the award of the appraisers appointed by the county court to the district court for Madison County.

The defendant filed its answer alleging that it was the owner of the fee title to the property on which the dam was erected. Defendant denied any restriction to the natural drainage to the North Fork River, and further denied that plaintiffs sustained any damage as the result of the construction of said dike.

William Deitloff, one of the owners and a party plaintiff, testified that the construction of the dike would, in times of major flood, cause the water to back up and flood his property. He further testified that the value of his property before the construction of the 13-foot dike was $28,500 and that the value of the property immediately afterwards was $19,500.

Walter Gutzmann, a licensed real estate broker, testified on behalf of the plaintiffs as to the value of the improvements on plaintiffs' property and the value of plaintiffs' property before and after the construction of the dike. He further stated that prior to the construction of the dike, he had seen as much as 60 acres under water on the west side of U. S. Highway No. 81 and that the highest he had seen the water was in 1944 and 1960.

Mr. Gutzmann, who has been an expert in real estate appraisals and values in and around Norfolk for 27 years, testified that he knew the location of the real estate owned by the plaintiffs, its improvements, the location of roads and highways running to and past the prop-

erty, and also the location of the North Fork River immediately to the north and west of the property in question. This witness further testified that the construction of the dike diminished the value of the property. The major elements he took into consideration in arriving at the diminution in value were: (1) The obstruction of the natural flow of water; (2) the undesirability of the place due to the construction of the dike; (3) that one must cross over the top of the dike to approach the property; and (4) the sandwiching of the property between the river and the dike. Mr. Gutzmann also stated he had taken into consideration: The dike's interference with air; fear of flood; difficulty in obtaining a loan; and difficulty in selling the property.

Mr. Gutzmann further testified that in his opinion the value of the property in question before the construction of the dam was $26,500 and after said construction its value was $18,000.

The defendant called as its witness Stuart Hales, a real estate expert who testified he was acquainted with the terrain, the North Fork River, and the area in general; that the construction of the embankment had no effect, one way or another, upon the market value of the land. He further testified that the mere location of the property in relationship to the river would act as a diminishing influence on the overall value of the property.

The court sustained the motion of the plaintiffs that the jury be permitted to view the premises and the terrain involved. The jury did so in charge of the court's bailiff.

The jury returned a verdict in favor of the plaintiffs in the sum of $8,500. Judgment was entered on the verdict.

The motion of defendant for judgment notwithstanding the verdict, or, in the alternative, for new trial was overruled by the court and the defendant appealed to this court.

It was agreed by the parties that the only issue to be considered was the diminution in the value of the plaintiff's property.

In its brief the defendant sets forth seven assignments of error as a basis for reversal of the judgment entered by the trial court: (1) and (2) that the trial court erred in overruling defendant's motion to dismiss after the plaintiffs rested and again after all parties rested; (3) that the trial court erred in overruling defendant's motion to strike the testimony of Walter Gutzmann; (4) that the trial court erred in submitting the issue of increased flood hazard to the jury as contained in instruction No. 9; (5) that the verdict of the jury and judgment of the trial court are not sustained by sufficient evidence; (6) that the verdict of the jury and the judgment of the trial court are contrary to the evidence; and (7) that the verdict of the jury and judgment of the trial court are contrary to law.

We take up first assignments of error Nos. (1), (2), and (3). As related heretofore, the evidence of the plaintiffs when they rested their case consisted in the main of the testimony of one of the owners of the property, William Deitloff, and Walter Gutzmann, the real estate expert. Mr. Deitloff testified as to his ownership of the property with his wife; that he was well acquainted with the area for a number of years; that he purchased it 13 years previous to the time of trial; and that he built the two homes thereon. He built the first house 11 years and the second 9 years previous to construction of the dike. He knew the value of his property before and after the construction of the dike. He stated the value before said construction was $28,500 and $19,500 afterwards, or a diminution of $9,000.

This court, in a long line of cases has repeatedly held that: "The owner of real estate which is taken in condemnation proceedings who is familiar with its value can testify as to its value." Pieper v. City of Scottsbluff, 176 Neb. 561, 126 N. W. 2d 865.

In Twenty Club v. State, 167 Neb. 37, 91 N. W. 2d 64, this court said: "In condemnation proceedings where persons are shown to be familiar with the particular land in question, they may be permitted as witnesses to testify as to the value of the tract immediately before and immediately after the appropriation."

Mr. Gutzmann testified as to his long acquaintance with the area and of his 27 years of experience in selling, appraising, and valuing real estate in the area of Norfolk and in Madison County. He gave his opinion that the value of plaintiffs' property before the dike was constructed was $26,500 and immediately thereafter was $18,000, a diminution of $8,500.

In Lansman v. State, 177 Neb. 119, 129 N. W. 2d 569, this court at page 125 said: " 'Generally, either lay or expert witnesses may be used to testify as to the value of a tract of land taken or the value of the remainder thereof immediately before and immediately after the taking if proper foundation is laid showing they have an acquaintance with the property and are informed as to the state of the market, the weight and credibility of their testimony being for the jury. * * * Under ordinary circumstances expert opinion evidence is to be considered and weighed by the triers of fact like any other testimony.' Medelman v. Stanton-Pilger Drainage Dist., 155 Neb. 518, 52 N. W. 2d 328." See, also, Burnett v. Central Nebraska P. P. & I. Dist., 125 F. 2d 836 (1942); Samuelson v. Central Nebraska P. P. & I. Dist., 125 F. 2d 838 (1942).

From a perponderance of the evidence we find that a sufficient foundation was laid for the testimony of both witnesses Deitloff and Gutzmann and we therefore find that the trial court was not in error in overruling defendant's motion to dismiss when plaintiffs rested.

Defendant's case consisted mainly of the testimony of Mr. Stuart Hales, who also qualified as an expert in values of land in the area. His testimony was received by the court. He testified in substance that the con-

struction of the dike did not affect the value of plaintiffs' land. Such testimony was in direct conflict with that of plaintiffs' witnesses. This conflict created a question of fact for the jury.

In Lansman v. State, *supra,* this court said: "The amount of the damages sustained by a landowner for the taking of land by eminent domain for a public improvement, and the difference in the fair and reasonable market value of the remainder of the land before and after the taking, is peculiarly of a local nature to be determined by a jury, and its verdict will not ordinarily be interfered with if it is based on the testimony. See, State v. Wixson, 175 Neb. 431, 122 N. W. 2d 72; State v. Dillon, 175 Neb. 444, 122 N. W. 2d 223; Pieper v. City of Scottsbluff, supra."

In view of the foregoing, we find no error in the lower court's overruling of defendant's motion to dismiss after all parties had rested and in overruling the motion to strike the testimony of Walter Gutzmann.

In assignment of error No. (4), the defendant claims that the court erred in submitting the issue of increased flood hazard to the jury in the court's instruction No. 9.

In the first paragraph of the instruction the court properly instructed the jury as to the quantum of evidence necessary to find that the dike prevented the flow of water to the south and increased the flood hazards to plaintiffs' property. It also instructed the jury as to the measure of recovery. The court then proceeded to instruct the jury that in determining the damage, it should take into consideration only the depreciation of said real estate which it found from the evidence had been caused by increased flood hazards and every non-speculative element of annoyance and disadvantage resulting therefrom.

In paragraphs 3 and 4 of the instruction, the court specifically restricted the jury in its consideration of the element of fear and the obstruction of light, air, or view. Said paragraphs state as follows: "Mere fear as

such cannot be made the basis upon which to predicate depreciation in the market value of land. Only that fear which may be considered as an element in fixing value is that of danger from increased flood hazards, the present or potential existence of which is grounded in authentic observation and experience, or in scientific investigation, and which fear circumscribes activity or limits freedom of use in the area of the present or potential danger. * * * You are not to take into consideration the obstruction of light, air or view as an element or elements of damage, and you are not allowed to consider evidence relating thereto."

Paragraph 5 of the instruction in substance instructed the jury to find for the defendant in the event the plaintiffs had failed to sustain the burden of proof.

In Dunlap v. Loup River Public Power Dist., 136 Neb. 11, 284 N. W. 742, 124 A. L. R. 400 (1939), at page 17, this court said: "Mere general fears from the presence of a transmission line cannot be made the basis upon which to predicate any depreciation in market value, for ill-defined fear that at some unknown time in the future, some misfortune may come to man or beast by reason of the transmission line cannot enter into the consideration of those who are required to fix the amount of the damages. But, on the other hand, if such fears be reasonable, not speculative nor ill-defined, but founded on practical experience, and if such fears are entertained so generally as to enter into the calculations of all who propose to buy or sell, can it logically be said that they do not depreciate the market value of the property? * * *

" 'The jury in fixing the damages sustained by a landowner in consequence of the appropriation, or injury, of his property for a public use may take into account every element of annoyance and disadvantage resulting from the improvement which would influence an intending purchaser's estimate of the market value of such property.' Chicago, R. I. & P. R. v. O'Neill, 58

Neb. 239, 78 N. W. 521." (Citing other cases.)

In Wahlgren v. Loup River Public Power Dist., 139 Neb. 489, 297 N. W. 833 (1941), the court, in a condemnation proceeding, held: "Anything connected with the land that would influence the market value of the land in the mind of a good faith intending purchaser would be an element for consideration in determining damage."

In Lane v. Burt County Public Power Dist., 163 Neb. 1, 77 N. W. 2d 773 (1956), it is stated: "The only fear which may be considered as an element in fixing value is that of danger, present or potential, existence of which is grounded in authentic observation and experience, or in scientific investigation, and which fear circumscribes activity or limits freedom of use in the area of present or potential danger, and which tends to lessen the market value of the land."

We have examined instruction No. 9 together with all of the other instructions given by the court. We are unable to find any appreciable error which seems to us to be prejudicial to the defendant.

Assignments of error Nos. (5) and (6) charge that the verdict of the jury and judgment of the court are not sustained by the evidence and are contrary to the evidence.

We have heretofore made reference to a substantial part of the evidence adduced in the lower court from which it may be seen, together with the viewing of the premises by the jury, that there was sufficient evidence before the jury and that the verdict of the jury and judgment of the court were not contrary to the evidence. There was a conflict in the evidence and the jury was properly instructed as to all the law applicable.

In Langdon v. Loup River Public Power Dist., 144 Neb. 325, 13 N. W. 325, 13 N. W. 2d 168, this court said: "When the evidence is conflicting the verdict of the jury will not be set aside, unless it is shown to be clearly

wrong." See, also, Grimm v. Elkhorn Valley Drainage Dist., 98 Neb. 260, 152 N. W. 374.

In Lansman v. State, *supra*, this court said: " 'Instructions to a jury must be considered together, so that they may be properly understood, and, if as a whole they fairly state the law applicable to the evidence when so construed, error cannot be predicated on the giving thereof.' Graves v. Bednar, supra. See, also, Bolio v. Scholting, 152 Neb. 588, 41 N. W. 2d 913; Coyle v. Stopak, 165 Neb. 594, 86 N. W. 2d 758."

An examination of all the instructions under the rule mentioned above discloses that they fairly and correctly stated the law applicable under the evidence in the instant case.

In State v. Wixson, 175 Neb. 431, 122 N. W. 2d 72, this court said: "In a condemnation action the weight and credibility of testimony of either lay or expert witnesses regarding value of land taken or value of remainder immediately before and immediately after taking is for the jury." See, also, Connor v. State, 175 Neb. 140, 120 N. W. 2d 916.

In Graves v. Bednar, 171 Neb. 499, 107 N. W. 2d 12, this court said: "In Snyder v. Farmers Irr. Dist., 157 Neb. 771, 61 N. W. 2d 557, we held: 'It is not the province of this court in reviewing the record in an action at law to resolve conflicts in or weigh the evidence. * * * It is presumed in such an action that controverted facts were decided by the jury in favor of the successful party, and its finding based on conflicting evidence will not be disturbed unless clearly wrong.' "

In Lilienthal v. Platte Valley Public Power & Irr. Dist., 134 Neb. 281, 278 N. W. 492, this court said: "The jury had the opportunity of seeing the premises in question, and their view thereof may be considered as evidence upon which they based their verdict. A verdict based on the evidence, where the jury have been permitted to view the premises, will not be disturbed

unless clearly wrong. Fremont, E. & M. V. R. Co. v. Meeker, 28 Neb. 94, 44 N. W. 79."

Finally, in its seventh assignment of error the defendant asserts that the verdict of the jury and the judgment of the court are contrary to law.

Article I, section 21, Constitution of the State of Nebraska, provides: "The property of no person shall be taken or damaged for public use without just compensation therefor."

In 4 Nichols on Eminent Domain, Property Damaged but not Taken, § 14.4, p. 735, it is stated: "Whenever an owner of property damaged by the construction of some public improvement is entitled to compensation by the constitution or statutes of the state, the measure of his compensation is the same as in the case of a partial taking, namely, the decrease in the market value of his land." Citing City of Omaha v. Kramer, 25 Neb. 489, 41 N. W. 295, 13 Am. S. R. 504; Chicago, K. & N. Ry. Co. v. Hazels, 26 Neb. 364, 42 N. W. 93; Omaha & N. P. R.R. Co. v. Janecek, 30 Neb. 276, 46 N. W. 478, 27 Am. S. R. 399; City of Plattsmouth v. Boeck, 32 Neb. 297, 49 N. W. 167; Lowe v. City of Omaha, 33 Neb. 587, 50 N. W. 760; Chicago, B. & Q. R.R. Co. v. O'Connor, 42 Neb. 90, 60 N. W. 326; Chicago, R. I. & P. Ry. Co. v. O'Neill, 58 Neb. 239, 78 N. W. 521; Harris v. Lincoln & N. W. Ry. Co., 91 Neb. 755, 137 N. W. 865; Stocking v. City of Lincoln, 93 Neb. 798, 142 N. W. 104, 46 L. R. A. N. S. 107.

In 1 Orgel, Valuation Under Eminent Domain, § 61, p. 281, it is said that when an easement is taken which still leaves the owner with property rights of material and measurable value, the condemnor need not pay for the entire value of the fee simple. But in these cases—such as in the cases where an electric power company runs wires over the owner's property—compensation is based, not on the separate value of the easement but rather on the damage to the owner's entire property attributable to the taking of the easement and to the

prospective use which the taker will make of it.

In Gruntorad v. Hughes Bros., Inc., 161 Neb. 358, 73 N. W. 2d 700, the court said at page 367: "If the property of appellants is damaged as claimed by them it results from a public use for which the city was liable by virtue of the constitutional provision that private property may not be taken or damaged for a public purpose without compensation. Art. I, § 21, Constitution of Nebraska."

In Baum v. County of Scotts Bluff, 169 Neb. 816, 101 N. W. 2d 455, it was said: "One whose property is damaged by the construction of a public improvement by the state or a subdivision thereof, has been damaged for a public use within the meaning of Article I, section 21, of the Constitution. Negligence is not a necessary element to be proved in maintaining an action for such damage." See, also, Richmond County v. Williams, 109 Ga. App. 670, 137 S. E. 2d 343 (1964).

We find no prejudicial error in the record. The judgment of the trial court is affirmed.

AFFIRMED.

McCOWN, J., dissenting.

The concept of damage in the constitutional sense is distinctly different when the flow of a watercourse is affected. See 2 Nichols, Eminent Domain (3d Ed.), § 6.446, p. 607. The problem of the liability of a municipality or other governmental subdivision in connection with flood protection measures, such as those involved here, has received widely varying treatment. See Annotation, 5 A. L. R. 2d 57.

This court has previously held that whatever may be done by an upper riparian landowner in the protection and improvement of his land may be done by a legally organized sanitary drainage district. See Cooper v. Sanitary Dist. No. 1, 146 Neb. 412, 19 N. W. 2d 619. In that case, as in this one, there was evidence that the plaintiff's land would be, and had been, flooded by the watercourse in a state of nature. There was specific

evidence in the Cooper case, that the plaintiff's land would have been flooded for a longer time and to a greater depth if the flood control works of the defendant had never been constructed. This court said in the Cooper case: "* * * the burden is upon the plaintiffs to show the extent of the increased overflow and the amount of damages arising therefrom. There is no attempt made in the present record to make such an allocation of damages. This fact, coupled with our finding that plaintiffs' land would have been flooded whether the works of the defendant were built or not, is sufficient to defeat the judgment."

In the present case, not only is it established that no flooding whatever has occurred since the defendant's construction, but there is a complete absence of any evidence to show the possible or probable extent of any future increased overflow, the additional amount of time it would remain on plaintiff's land, or the increased damage, if any, that it might cause.

Evidence that the market value, of plaintiff's land has decreased and that the decrease is related to governmental construction on lands other than the plaintiffs should not be sufficient to establish a taking or damaging of plaintiff's property under Article I, section 21, of the Constitution of Nebraska.