[Civ. No. 10539. First Appellate District, Division One.—September 26, 1939.]

MARIN MUNICIPAL WATER DISTRICT (a Public Corporation), Respondent, v. PENINSULA PAVING COMPANY (a Corporation), Appellant.

Jordan L. Martinelli and Bronson, Bronson & McKinnon for Appellant.

Duke & Cowan for Respondent.

PETERS, P. J.—Defendant, Peninsula Paving Company, appeals from a judgment against it and in favor of plaintiff, Marin Municipal Water District, rendered in an action brought by plaintiff for damages for injury to its pipe line alleged to have been caused by defendant's negligence in constructing a state highway.

The basic facts are not materially in dispute. The plaintiff is a municipal water district engaged in the business of supplying water to various municipalities in Marin County. In the performance of this function it maintains various distributing water mains. One such main was a twelve-inch cast iron main leading to the town of Sausalito. This main, so far as pertinent here, was partially imbedded in the western shoulder of the state highway leading to Sausalito, and entirely within the state right of way. This highway, for a portion of its distance, crossed a mud swamp. In 1932 the defendant paving company entered into a contract with the

department of public works, division of highways of the State of California, to construct a new state highway from a point designated as Waldo Point to Sausalito. This new highway was to replace the old highway, and roughly parallcled it. Where the new highway crossed the swamp the mud was twenty to sixty feet deep. The mud area between the old and new highways in some places was but thirty feet wide. In constructing the new highway the method of construction called for by the plans and specifications was to pile sufficient rock and dirt on the mud to cause it to settle through the mud to solid ground. The inevitable effect was to displace the mud, a considerable portion of which was forced to the west. The westward displacement exerted pressure against the old highway and caused that highway to move westerly in some places as much as ten feet. This caused the plaintiff's pipe line to buckle and break, resulting in the injury which forms the basis of this action.

The pipe line originally had been installed in the center of the old highway in 1909, at which time the road was a county road. It became part of the state highway system in 1914. In 1916 the pipe line was moved to the west shoulder of the old highway, where it remained until the occurrences here described.

The defendant contractor, as well as the state engineers, knew of the existence of the pipe line. The contract between the state and defendant expressly called the attention of defendant to the fact that certain water, gas and sewer lines were buried within the limits of the work to be done, and provided that: ''The contractor shall take every precaution to protect and preserve such lines from injury or damage during construction operations.''

The evidence showed that the work of the defendant was planned by the state engineers, and that the actual construction work was supervised and directed by the state engineers. The work done conformed in every detail to the plans and specifications furnished by the state, and everything done by the defendant was approved by the state engineers.

Prior to the commencement of construction the state informed plaintiff by letter of the proposed construction and warned it to protect its property. Complete plans of the construction were forwarded to the plaintiff.

The theory of the complaint and the theory at the trial was that defendant contractor had so negligently performed the work that plaintiff was injured. The charging paragraph of the complaint, after describing the method of construction above set forth, alleged that the defendant: "did impose upon the mud adjoining said old county road large and unusual loads of earth and rock, *and did negligently and carelessly permit said fill to accumulate in large quantities and to unusual heights above the grade of the new highway*, at given points alongside of said old county road, whereby the mud underneath was caused to be displaced, and was caused to escape from beneath the load of said earth, rock and other filling material, to the sides and underneath the old county road in which the pipes and transmission lines of plaintiff were so lawfully laid and maintained as aforesaid, and did cause said old county road to heave, bulge and crack, and did cause the water pipes and mains of this plaintiff to heave and bulge with the said county road, and did cause the joints thereof to leak and the said pipes to buckle and permit the water thereof to escape, *and that through and by the negligence and gross carelessness of the said defendant Peninsula Paving Company this plaintiff suffered damage and injury* to its said pipes in the sum of Twenty-Six Hundred Dollars ($2,600.00)''.

The trial court found this allegation to be generally true except that the court specifically found that the piling of the earth fill on the mud was "done and performed in accordance with the method ordered, directed and adopted by the Residence Construction Engineer of the Highway Department of the State of California; the Court further finds that under the plans and specifications of the contract between defendant and the State of California, the method and manner of performance of the aforesaid work by defendant at said time and place was specified to be so done under the direction and control of said State Highway Engineer''.

After finding that the plaintiff had received notice of the proposed construction and a copy of the plans, the court found that the plaintiff took no steps to protect its pipes at the place of damage (although it did make some 33 changes in its pipe line at other places along the line of construction), and that the plaintiff by the exercise of ordinary care "could not have discovered that in the performance of said contract by said defendant that the old road would shift''.

The court then made this finding: "The Court further finds that all materials deposited by defendant along and upon the right of way of said State Highway hereinabove mentioned, were deposited by defendant in conformity with the method and under the directions and orders of said State Highway Engineer, and that *plaintiff had actual knowledge of the manner in which the work performed by defendant was being performed as it progressed from day to day.*"

Appellant and respondent discuss at some length the nature of the right that plaintiff has in the state highway. By the provisions of section 19 of the Municipal Water District Act (Stats. 1911, p. 1290; Deering's Gen. Laws, 1931, Act 5243), under which plaintiff is organized, it is provided: "The right of way is hereby given, dedicated and set apart to locate, construct and maintain said works over and through any of the lands which are now or may be the property of this state, and to have the same rights and privileges appertaining thereto as have been or may be granted to municipalities within the state."

. We do not find it necessary to now decide the exact nature of the right the plaintiff water district has in the state highway. We are not here involved with the question as to who shall bear the expense of any changes required by the construction of the new highway, or with any liability in eminent domain the state or the highway department may owe to the plaintiff. So far as the contractor is concerned, the proper rule of liability is thus stated in *Northwestern Pac. R. R. Co.* v. *Currie,* 100 Cal. App. 173, at p. 175 [279 Pac. 1057]:

"Where a county contracts for the doing of construction work according to plans and specifications theretofore adopted and the contractor performs the work with proper care and skill and in conformity with the plans and specifications, but the work thus planned and specified results in an injury to adjacent property, the liability, if any there is, for the payment of damages, is upon the county under its obligation to compensate the damages resulting from the exercise of its governmental power (*Elliott* v. *County of Los Angeles,* 183 Cal. 472 [191 Pac. 899]; *De Baker* v. *Southern Cal. Ry. Co.,* 106 Cal. 257 [46 Am. St. Rep. 237, 39 Pac. 610]); but where the contractor departs from the contract, plans or specifications, or goes beyond them, or performs the work planned and specified in an improper, careless, or negli-

gent manner, which results in injury to adjacent property, then he is responsible in damages for the tort he has committed. (*Shaw* v. *Crocker,* 42 Cal. 435; *Reardon* v. *San Francisco,* 66 Cal. 492 [56 Am. Rep. 109, 6 Pac. 317] ; *Eachus* v. *Los Angeles,* 130 Cal. 492 [80 Am. St. Rep. 147, 62 Pac. 829] ; *Norton* v. *Ransome-Crummey Co.,* 173 Cal. 343 [159 Pac. 1177] ; *Perkins* v. *Blauth,* 163 Cal. 782 [127 Pac. 50].) " See, also, *Kaufman* v. *Tomich,* 208 Cal. 19 [280 Pac. 130]. There is no contention here made that the building of the highway was of itself inherently wrong. In fact such a contention could not properly be made under the pleadings and proof. A reading of the complaint and the findings above referred to demonstrates that the action was brought and tried on the theory that the contractor had been guilty of negligence in the performance of the work. The sole question for determination, therefore, is whether the evidence sustains the finding of negligence.

The provision of the contract between the state and defendant above quoted that the contractor should preserve and protect the pipe line, in no way enlarged the liability of the contractor to third persons. All that such a provision means is that the contractor is liable to third persons for failure to use ordinary care in the performance of the contract work. (*Blochman* v. *Spreckels,* 135 Cal. 662 [67 Pac. 1061, 57 L. R. A. 213] ; *Gay* v. *Engebretson,* 158 Cal. 21 [109 Pac. 876, 139 Am. St. Rep. 67].) The rule of these cases, so far as they apply to the problem here presented, has not been relaxed or changed by later decisions.

We turn now to a discussion of the issue of negligence. As pleaded in the complaint the one act of negligence relied on was that the defendant negligently permitted a fill to accumulate in large quantities and to unusual height above the grade of the new highway which forced the mud against the old highway and caused the damage to plaintiff's pipe line. Any contention that the work was improperly planned by the state, or that the contractor was guilty of any other act of negligence, is outside the issues formed by the complaint and answer. (*McKeon* v. *Lissner,* 193 Cal. 297 [223 Pac. 965].)

On the issue of negligence pleaded, the engineer of plaintiff district conceded that the defendant had not piled any greater fill on the mud than was reasonably necessary to force the fill down to solid ground. The evidence is with-

out conflict, and the trial court found, that the defendant followed the plans and specifications exactly, and constructed the fill as directed by the state engineer, and that the plaintiff district was informed of the proposed construction and furnished plans thereof. Further it appears, and the trial court found, that plaintiff's engineer knew of the day by day progress of the work. There is no testimony that this was not the proper method of construction, plaintiff's engineer testifying "whether that is the correct way, I do not say; I am not a highway engineer". Defendant's witnesses testified that the method of construction used was proper. Under such circumstances, under rules already discussed, it is obvious that in performing the work exactly in accordance with the plans and specifications, and under the supervision of the state engineer, the contractor was not guilty of negligence in reference to the only ground of negligence pleaded in the complaint.

Apparently it is respondent's theory that in some fashion the contractor should have removed the mud between the two highways and thus prevented the pressure on the old highway. This is not pleaded. No evidence was offered by plaintiff that this was feasible, or could reasonably have been done. Plaintiff's engineer did testify that clam shell dredgers could remove mud, but there was no evidence that enough dredgers could have been placed to materially reduce the pressure. Mr. Poss, district construction engineer, division of highways, under whose supervision the fill was constructed, testified that "I doubt if there was enough equipment could have been assembled there to have reduced the pressure entirely." There was evidence that a clam shell dredger had been used for a period of six weeks, at the order of Mr. Poss, and paid for as an extra, and that this had somewhat reduced pressure on the old highway, but there was no evidence that such methods would have reduced the pressure entirely so as to have prevented injury to the pipe line. Mr. Poss did testify that of course if all the mud had been removed before the fill was made no pressure would have been exerted against the old road; that there might be methods of dredging the entire bay; that the only method he knew of would be to put in an enormous suction dredge and suck the entire mud out. He did state that it was cheaper to let nature take its course and handle it afterwards. This might conceivably be pertinent as to the possible lia-

bility of the state or its agencies, but has no relation to the alleged negligence of defendant. No evidence was offered that the suggested method could reasonably have been employed.

There is evidence that after the old highway began to shift and the mud began to overflow the old road, that the contractor, under the direction and supervision of the state engineers, piled dirt over the mud between the two highways and that this increased the pressure on the old highway. This was not pleaded as a ground of negligence. Moreover, the major damage to the pipe line had already occurred before this was done. There is no evidence that the pipe line would not have been injured had this not been done.

Under these circumstances it is obvious that there is no substantial evidence to support the finding of negligence on the part of the contractor. As we view the case it presents the situation of a contractor carefully, and without negligence, constructing a highway according to the plans and specifications furnished by the state and under the constant supervision of the state engineers. If the plaintiff was entitled to compensation for injury to its pipe line by reason of certain rights gained in the highway, this right existed only as against the state or its public agencies. The proper rule is thus stated in *De Baker* v. *Southern Cal. Railway Co.,* 106 Cal. 257, 284 [39 Pac. 610, 46 Am. St. Rep. 237]:

"It is suggested that, in view of the provision of our present Constitution (Const., art. I, sec. 14), that 'private property shall not be taken *or damaged* for public use without just compensation having been first made to, or paid into court for, the owner', the doctrine of *Green* v. *Swift* [47 Cal. 536], *supra,* is no longer applicable to cases of this character. It is possible that this may be true, but it can make no difference in the present case whether it is true or not. Conceding, for the sake of the argument, that the effect of the constitutional provision is to make the state, or a public agency by it employed in the construction of a work designed to protect the lives and property of a large community, liable for indirect and consequential damages, such as were alleged and proved in this case, and which could not have been estimated or compensated in advance, *although some damage might naturally have been apprehended,* it does not follow that the contractor, executing the work carefully and properly according to the plan, would be liable. On the

contrary, since in the case supposed the state or corporation would be liable, not for a tort, but only upon its obligation to compensate the damages resulting from the rightful exercise of its power, the liability would rest upon it alone, *and the contractor, who has merely constructed the work carefully and properly according to the plan, will be exempt from any liability.*" (Italics ours.) See, also, *Northwestern Pac. R. R. Co.* v. *Currie, supra.*

For the foregoing reasons it is apparent that the judgment should be, and, therefore, is reversed.

Knight, J., and Ward, J., concurred.