# Richmond

EMMA HELDT V. ELIZABETH RIVER TUNNEL DISTRICT, A
POLITICAL SUBDIVISION OF THE STATE OF VIRGINIA, ACTING
BY AND THROUGH THE ELIZABETH RIVER TUNNEL
COMMISSION, THE GOVERNING BODY THEREOF; AND E.
VIRGINIUS WILLIAMS, TRADING AS E. V.
WILLIAMS COMPANY.

November 22, 1954.

Record No. 4258.

Present, Eggleston, Spratley, Buchanan, Miller, Smith and
Whittle, JJ.

The opinion states the case.

*Sacks & Sacks,* for the plaintiff in error.

*Williams, Cocke, Worrell & Kelly, Jack E. Greer* and *Breeden & Hoffman,* for the defendants in error.

EGGLESTON, J., delivered the opinion of the court.

Emma Heldt filed a motion for judgment against the Elizabeth River Tunnel District, Tidewater Construction Corporation, and E. Virginius Williams, trading as E. V. Williams Company, to recover damages to her property resulting from the construction of a tunnel for public use under the Elizabeth river, connecting the cities of Norfolk and Portsmouth. The plaintiff alleged that the Elizabeth River Tunnel District had contracted with the Tidewater Construction Corporation and E. Virginius Williams to construct the tunnel, and that during the construction the contractors had negligently and carelessly caused large quantities of water to flow under the buildings on the plaintiff's property, thereby damaging the foundations and walls.

The Tidewater Construction Corporation and Williams filed separate responses, denying the allegations of negligence on its or his part and the resulting damage to the plaintiff's property. The Tunnel District filed its grounds of defense and a demurrer, the latter challenging the sufficiency of the

motion on the ground that it failed to charge any negligence on the part of this defendant. The demurrer was sustained, but during the progress of the trial on an amended motion the lower court ruled that allegation and proof of negligence on the part of that defendant were not necessary, and the case proceeded upon that basis. There was a trial before a jury and after the evidence had been concluded the plaintiff elected to take a nonsuit as to the Tidewater Construction Corporation, the trial court struck the evidence as to the defendant, E. Virginius Williams, and there was a verdict in favor of the defendant, Tunnel District. To review the judgment entered upon that verdict the present writ has been awarded the plaintiff.

At the oral argument before us the assignment of error challenging the action of the trial court in striking the evidence as to the defendant, Williams, was abandoned. Consequently, our only concern is whether the verdict and judgment in favor of the defendant, Tunnel District, should be sustained. The parties will be referred to as they appeared in the trial court.

The plaintiff contends that the trial court committed prejudicial errors in its rulings in the granting and refusing of instructions.

In an assignment of cross-error the defendant, Tunnel District, challenges the action of the trial court in ruling that allegation and proof of its negligence were not essential to the plaintiff's case.

By Acts of 1942, ch. 130, p. 168,[1] the General Assembly created the Elizabeth River Tunnel District, a political subdivision of the State, authorizing it to construct a tunnel for vehicular traffic between the cities of Norfolk and Portsmouth. The District was clothed with the power of eminent domain and permitted to sue and be sued. The Tunnel District entered into contracts with the Tidewater Construction Corporation and E. Virginius Williams for the con-

---

[1] For amendatory acts see Acts 1950, ch. 4, p. 5; Acts 1952, ch. 490, p. 784; id., ch. 604, p. 1044.

struction of a portion of the project. The construction work on the tunnel began some time in 1950 and was completed in 1952.

The northern or Norfolk entrance to the tunnel runs in a southerly direction diagonally across Chestnut street, a short distance south of its intersection with Pine street. The plaintiff owns a two-story brick building on the northwestern corner of this intersection, which is about fifty or sixty feet west of the western edge of the tunnel. She conducts a confectionery store on the first floor of this building and uses the second story as a dwelling. She also owns a two-story frame residence located on the north side of Pine street, in the rear of the store building.

The evidence on behalf of the plaintiff is that in 1944 the foundation of the store building was renewed and the building otherwise repaired and put in good condition; that it so remained until the work on the tunnel commenced; and that the Pine street house was likewise in good condition before the commencement of the project. She offered evidence that in the construction of the tunnel a large quantity of water was used from a hydrant located on the sidewalk immediately in front of the store building; that frequently water was allowed to leak from the hydrant onto the sidewalk and street; that large tanks filled with water were permitted to overflow onto the sidewalk and street; that water was pumped out of the excavation onto the street; that the water from these sources was allowed to flow under the plaintiff's buildings, weakening the foundations, causing both buildings to sag, and the walls to crack; and that because of the improper manner in which the street was restored and graded after the completion of the tunnel, rain water collected in front of the properties and likewise flowed under the buildings.

A number of witnesses corroborated the plaintiff's testimony as to the condition of her property both prior to and since the commencement of the construction of the tunnel. Several photographs taken shortly before the trial show the

damaged condition of both buildings. Contractors testified that the expenditure of a considerable sum of money would be necessary to repair the damage.

Witnesses on behalf of the Tunnel District testified that although considerable quantities of water were drawn from the hydrant in question for construction purposes in September, 1950, and January, 1951, no appreciable quantity escaped from the hydrant onto the sidewalk or street, or flowed under the plaintiff's property. They also denied that any water was pumped out of the excavation onto the street or sidewalk so as to run under the plaintiff's property. They further testified that after the completion of the project the street was restored to its proper grade and level.

The Tunnel District introduced the testimony of a contractor who had examined the buildings in November, 1951, and February, 1952. While he agreed as to the present poor condition of the two buildings, he expressed the view that much of the damage complained of had occurred long before the work on the tunnel had commenced; that the buildings were in a low spot, below grade, and rain water had been running under them for many years. Moreover, he pointed out, there were no gutters or downspouts on the buildings as required by the city ordinance, and that thus the water from the roofs had been permitted for a number of years to run down the sides of the buildings and under the foundations, thus causing or contributing to the damage complained of.

On rebuttal the plaintiff testified that both buildings were equipped with gutters and downspouts as required by the ordinance.

■ The plaintiff's cause of action is based on the provision in section 58 of the Constitution of Virginia that the General Assembly "shall not enact any law whereby private property shall be taken *or damaged* for public uses, without just compensation, * * *." (Emphasis added.) The underlying question presented in the defendant's assignment of cross-error is whether the plaintiff's right to recover for the

alleged damage done to her property in the construction of the project must be predicated upon allegation and proof of the defendant's negligence.

Although the words "or damaged" were added to the Constitution in 1902, the precise question has not been heretofore decided by this court.

We have no difficulty in reaching the conclusion that such right of recovery for damage done to property by an agency clothed with the power of eminent domain in effecting a public improvement is not predicated upon proof of negligence. In the language used we find no words of qualification or limitation to support the contention that the right of an owner to compensation for property "taken or damaged for public uses" is so conditioned. We think it is the plain purpose of the language used to guarantee to an owner just compensation both where his property is *taken* for public uses and where it is *damaged* for public uses, irrespective of whether there be negligence in the taking or the damage.

In recent years there have been written into the constitutions of twenty-five States[2] similar provisions providing for compensation where property has been "damaged," "injured," or "destroyed" by the exercise of eminent domain, and without exception the courts have held that the right to recover for such consequential damage does not depend upon allegation and proof of negligence in the accomplishment of the project. Nichols on Eminent Domain, 3d Ed., Vol. 2, § 6.4432(2), p. 345; 20 C. J., Eminent Domain, § 140, pp 672, 673; 29 C. J. S., Eminent Domain, § 111, p. 921; 18 Am. Jur., Eminent Domain, § 400, pp. 1047, 1048. Numerous supporting cases are collected in the notes in the texts cited.

 It is well settled that such a constitutional provision is self-executing and the landowner may enforce his constitutional right to compensation in a common-law action. 18 Am. Jur., Eminent Domain, § 384, p. 1028; *Swift & Co.* v. *City of Newport News*, 105 Va. 108, 114, 115, 52 S. E. 821, 3 L. R. A., N.S., 404.

---

[2] Nichols on Eminent Domain, 3d Ed., Vol. 2, § 6.44, pp. 324, 325.

We are of opinion that the trial court was correct in its ruling that the plaintiff's right of recovery was not predicated upon allegation and proof of the defendant's negligence. Hence, there is no merit in the assignment of cross-error.

Error is assigned to the action of the trial court in amending Instruction P-1 by adding the italicized words: "The court instructs the jury that the defendant, Elizabeth River Tunnel District, is a Virginia corporation, and has the right of eminent domain, and that it has constructed a tunnel connecting the City of Norfolk with the City of Portsmouth. And if you believe from the evidence that the plaintiff sustained damage to her property as a proximate result of the construction of said tunnel, then you shall find for the plaintiff for the amount of the damages she so sustained as shown by the evidence, *unless you believe that the plaintiff was guilty of negligence which proximately contributed to her damage.*" (Italics supplied.)

The instruction as offered by the plaintiff, without the modifying language, was a correct statement of the law. It entitled the plaintiff to a recovery for the damage shown to have been done to her property as a proximate result of the construction of the tunnel, irrespective of the defendant's negligence. The effect of the modification was to relieve the defendant of liability if the jury believed from the evidence that the plaintiff was guilty of negligence which proximately contributed to the damage.

The defendant argues that there was a sufficient basis for the modification of the instruction in the evidence adduced by it that the plaintiff had failed to have her buildings equipped with gutters and downspouts as required by the city ordinance, and that such failure had caused water from the roofs to run under the buildings and damage the foundations.

The defendant was, of course, not liable for the damage, if any, caused in this manner and was entitled to have the jury so instructed. Under the evidence which has been

outlined, a critical issue to be determined by the jury was the cause of the damage, whether the acts of the contractors of the Tunnel District in constructing the project for which the defendant was liable, or the failure of the plaintiff to have her buildings properly equipped with gutters, or some other cause, for which the defendant was not liable. If the damage was occasioned by a combination of these causes, it was for the jury to determine from the evidence what part was attributable to the construction of the tunnel and what part to other causes. If the evidence was not sufficient for the jury to determine with a reasonable degree of certainty that all of the damage, or what part thereof, was occasioned by the construction of the tunnel, then the plaintiff was not entitled to a verdict against the Tunnel District. *Panther Coal Co.* v. *Looney*, 185 Va. 758, 771, 772, 40 S. E. (2d) 298, 304, 305.

But it was error to instruct the jury that the negligence of the plaintiff would defeat her recovery, for notwithstanding her negligence, if any, the jury might have found from the evidence that some of the damage complained of was actually caused by the construction of the project and was severable from that occasioned by her negligence.

The plaintiff complains of the action of the trial court in refusing to grant Instruction P-2, which in substance told the jury that if they believed from the evidence that the plaintiff's property "was damaged *to any extent* by reason of the building of such tunnel, then you shall find for the plaintiff for such damage as she sustained to her property by reason of the construction of said tunnel, even though the said Elizabeth River Tunnel Commission or its subcontractors or their employees were free from any negligence in the construction of said tunnel." (Emphasis added.) With the elimination of the italicized words this instruction should have been given.

At the request of the defendant the court granted Instruction D-5 which reads thus: "The court instructs the jury that if you believe from the evidence that the plain-

tiff's buildings were damaged by settling, cracking, or deterioration prior to the time the tunnel approach was constructed, you shall find your verdict for the defendants."

The effect of this instruction was to preclude the plaintiff from recovering the damage done to her buildings in the construction of the tunnel if the jury believed from the evidence that prior to the construction they had been damaged to some extent. As has been pointed out in the discussion of Instruction P-1, it was for the jury to determine and apportion the prior damage, if any, and the construction damage, if any, done to the property.

The plaintiff complains of Instruction D-15 which told the jury that unless they believed by a preponderance of the evidence that the Tunnel District "caused large quantities of water to flow from the fire plug and/or water tank under the buildings of the plaintiff and that such acts proximately caused the damage complained of," their verdict should be for the defendant.

The granting of this instruction was error, because its effect was to exclude from the consideration of the jury evidence on behalf of the plaintiff that her property had been damaged from other causes than those detailed in the instruction, namely, from water pumped from the excavation and from the improper change of the grade of the street subsequent to the construction of the tunnel.

Because of these errors in the rulings on instructions given and refused, the judgment complained of is reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed and remanded.*