40864.   CITY OF ATLANTA v. DONALD.

DECIDED FEBRUARY 19, 1965—REHEARING DENIED
MARCH 12, 1965.

*Henry L. Bowden, Robert S. Wiggins,* for plaintiff in error.
*Peek, Whaley & Blackburn, Glenville Haldi,* contra.

BELL, Presiding Judge. ■ This case was originally carried to the Supreme Court of Georgia. The Supreme Court transferred it to this court as one of that class of cases "that involve application, in a general sense, of unquestioned and unambiguous provisions of the Constitution to a given state of facts, and that do not involve construction of some constitutional provision." *City of Atlanta v. Donald,* 220 Ga. 98 (137 SE2d 294).

■ Neither *Thompson v. City of Atlanta,* 219 Ga. 190 (132 SE2d 188) nor *Dyer v. City of Atlanta,* 219 Ga. 538 (134 SE2d 585) is controlling here as defendant insists they are, although the petitions under consideration in those cases attempted to set forth causes of action upon factual situations substantially similar to the facts of this case.

The Supreme Court held in *Thompson* that the petitions had been properly dismissed for failure to show that the ante litem notice required by *Code Ann.* § 69-308 had been given to defendant. In this case the petition affirmatively shows that the requisite ante litem notice was given.

In *Dyer* the Supreme Court held at p. 539: "While the petitions allege the 'illegal and improper operation' of the airport, and that such operation is unnecessary, all the acts complained of are those of the airlines in the operation of their airplanes. It is not alleged that the city has done anything or failed to do anything by design and construction of the airport or otherwise to require, cause, or make necessary the low flights over plaintiff's property causing loud noise and vibrations, or to cause the airplanes to emit partially burned fuel, or to cause dust, odors, and noxious fumes to emanate from the airplanes. . . It is

not alleged that the city is owner or operator of such airplanes. The only charge against the city is that these acts are committed on its airport, which without more alleges no responsibility of the city therefor."

Examination of the records in *Dyer v. City of Atlanta* and its companion cases reveals that the petitions alleged that the various acts damaging the plaintiffs' property, which were acts of the airlines, were "unnecessary." This, together with the failure to allege that the city exercised control and supervision of the use of its airport by the airlines, would militate against any conclusion that the city by location and control of the airport was responsible for the acts complained of. Here, the petition alleged that the city owned the airport and had extended its facilities to accommodate commercial jet aircraft, that the airlines operated their aircraft from the airport "under the control" of the city, and that the low-altitude over-flights damaging plaintiff's property were "necessary" in taking off and landing the aircraft. These allegations distinguish this case from *Dyer* and establish a basis for the city's liability for a taking or damaging of plaintiff's property through acts of the airlines if a cause of action is otherwise stated. See *Thrasher v. City of Atlanta,* 178 Ga. 514, 516 (1) (173 SE 817, 99 ALR 158).

■ An action against a governmental defendant to recover the value of property which has been taken or damaged in fact by the governmental defendant without formal exercise of the power of eminent domain has been described as "inverse condemnation." City of Jacksonville v. Schumann, (Fla.) 167 S2d 95. Cf., Trippe v. Port of New York Authority, 17 App.Div.2d 472 (236 NYS2d 312). This is merely a new name for an old remedy. The right of a property owner to maintain an action at law for damages arises by necessary implication from the constitutional prohibition against the taking or damaging of private property for public purposes without just and adequate compensation having been first paid, and this right is recognized in numerous cases. See: *Smith v. Floyd County,* 85 Ga. 420, 423-425 (2) (11 SE 850); *Mayor of Albany v. Sikes,* 94 Ga. 30, 31 (1) (20 SE 257, 26 LRA 653, 47 ASR 132); *Waters v. De-Kalb County,* 208 Ga. 741, 745 (69 SE2d 274); *Fender v. Lee*

*County,* 31 Ga. App. 604 (1) (121 SE 843); *Gwinnett County v. Allen,* 56 Ga. App. 753, 754 (194 SE 38); 30 CJS 115, Eminent Domain, § 400.

In addition to *Thompson* and *Dyer,* the Georgia Supreme Court has considered the question of liability to property owners for aircraft over-flights and noise in three other cases. See: *Thrasher v. City of Atlanta,* supra; *Delta Air Corp. v. Kersey,* 193 Ga. 862 (20 SE2d 245, 140 ALR 1352); *Scott v. Dudley,* 214 Ga. 565 (105 SE2d 752). In the latter cases the decisions turned upon theories of trespass or nuisance, which are not involved in this case.[1] The appellate courts of this State have not previously considered the question whether acts alleged in the petition here constitute a taking or damaging within constitutional prohibitions.[2]

The acts complained of as constituting a taking of plaintiff's property consist mainly of low-altitude flights directly above plaintiff's land. The petition alleges acts of this kind sufficiently to bring it within the doctrine of United States v. Causby, 328 U.S. 256 (66 SC 1062, 90 LE 1206) and Griggs v. Allegheny County, 369 U.S. 84 (82 SC 531, 7 LE2d 585).

The Causby case held that the government had taken an ease-

---

[1]It is highly questionable whether cases of this nature should be constrained by traditional concepts of trespass and nuisance. See Martin v. Port of Seattle, (Wash.) 391 P2d 540. In this general area compare the case of *Austin v. Augusta Terminal R. Co.,* 108 Ga. 671 (34 SE 852, 47 LRA 755) with the following: Thornburg v. Port of Portland, 233 Ore. 178 (376 P2d 100); Martin v. Port of Seattle, supra; Batten v. United States (10th Cir.) 306 F2d 580 (see especially Chief Judge Murrah's dissent at 585); Airplane Noise: Problem in Tort Law and Federalism, 74 Harvard Law Review 1581.

[2]See Chief Justice Russell's concurring opinion in *Thrasher v. City of Atlanta,* supra, at 532: "The grant of a franchise . . . can no more condemn a right of way for an aviation company over the land or dwelling of another until the owner has received adequate compensation for the condemnation of a public use, than would be the case where the condemnation sought to affect the surface of the ground or the use of the same by subterranean excavation."

ment by repeated low-level flights over the claimants' land in violation of the Fifth Amendment: "At common law ownership of the land extended to the periphery of the universe—Cujus est solum ejus est usque ad coelum. But that doctrine has no place in the modern world. The air is a public highway, as Congress has declared.[3] . . Yet it is obvious that if the landowner is

---

[3]"The United States relies on the Air Commerce Act of [May 20] 1926, 44 Stat. 568 c 344, 49 USCA § 171, 10A FCA title 49, § 171, as amended by the Civil Aeronautics Act of [June 23] 1938, 52 Stat. 973, c 601, 49 USCA § 401, 10A FCA title 49, § 401. Under those statutes the United States has 'complete and exclusive national sovereignty in the air space' over this country. 49 USCA § 176 (a), 10A FCA title 49, § 176 (a). They grant any citizen of the United States 'a public right of freedom of transit in air commerce through the navigable air space of the United States.' 49 USCA § 403, 10A FCA title 49, § 403. And 'navigable air space' is defined as 'airspace above the minimum safe altitudes of flight prescribed by the Civil Aeronautics Authority.' 49 USCA § 180, 10A FCA title 49, § 180. And it is provided that 'such navigable air space shall be subject to a public right of freedom of interstate and foreign air navigation.' Ibid." United States v. Causby, supra, at 260. Subsequently to the decision in Causby, Congress enacted the Federal Aviation Act of 1958, Section 101 (24) of which provides: " 'Navigable airspace' means airspace above the minimum altitudes of flight prescribed by regulations issued under this act, *and shall include* airspace needed to insure safety in take-off and landing of aircraft." (Emphasis added.) 72 Stat. 739, 49 USC § 1301 (24). See Griggs v. Allegheny County, supra at 88, which was decided in light of the latter provision, and Ackerman v. Port of Seattle, 55 Wash.2d 401 (348 P2d 664), which was decided in light of federal regulations promulgated pursuant to this provision. Ga. Code Ann. provides: "Flight in aircraft over the lands and waters is lawful, unless at such a low altitude as to interfere with the then existing reasonable use to which the land or water or space over the land or water is put by the owner of the land or water; or unless so conducted as to be imminently dangerous to persons or property lawfully on the land or water beneath." *Code* § 11-101. "The intent of Chapter 11-1 is to coincide with the policies, principles, and practices established by the United States Air-Commerce Act of 1926 and all amendments thereto." *Code* § 11-110.

to have full enjoyment of the land, he must have exclusive control of the immediate reaches of the enveloping atmosphere. . . . *The landowner owns at least as much of the space above the ground as he can use in connection with the land*[4]. . . *The fact that he does not occupy it in a physical sense—by the erection of buildings and the like—is not material. . . While the owner does not in any physical manner occupy that stratum of airspace or make use of it in the conventional sense, he does use it in somewhat the same sense that space left between buildings for light and air is used.* The superadjacent airspace at this low altitude is so close to the land that continuous invasions of it affect the use of the surface of the land itself. We think that the landowner, as an incident to his ownership, has a claim to it and that invasions of it are in the same category as invasions of the surface." (Emphasis added.) United States v. Causby, supra, at 260-264.

Thus Causby's broad language defines the ownership of superadjacent airspace in terms not restricted to existing uses of the land, but including all potential uses as well. Under the Causby rationale it is not necessary to show either that the overflights interfere with an existing use of the land or that they occur through airspace which potentially might be occupied by the landowner: *It is sufficient to show a taking if the over-flights are low enough and frequent enough merely to interfere with some potential use of the land.*

---

[4]To the same effect see *Thrasher v. City of Atlanta,* supra, at 529-531; *Delta Air Corp. v. Kersey,* supra, at 868: "The space in the far distance above the earth is in the actual possession of no one, and, being incapable of possession, title to the land beneath does not necessarily include title to such space. The legal title can hardly extend above an altitude representing the reasonable possibility of man's occupation and dominion, although as respects the realm beyond this the owner of the land may complain of any use tending to diminish the free enjoyment of the soil beneath. . . Perhaps the owner of the land may be considered as being in actual possession of the space immediately covering the trees, buildings, and structures affixed to the soil, so that the act of navigating a plane through this stratum could be condemned as a trespass."

The Griggs case held under the Fourteenth Amendment that the county which had promoted and established an airport had taken an easement by low-level flights across the claimant's land where the planes did not belong to and were not operated by the taking agency: "The glide path for the northeast runway is as necessary for the operation of the airport as is a surface right of way for operation of a bridge, or as is the land for the operation of a dam. . . As stated by the Supreme Court of Washington in Ackerman v. Port of Seattle, 55 Wash.2d 401, 413, 348 P2d 664, 671, 77 ALR2d 1344, '. . . an adequate approach way is as necessary a part of an airport as is the ground on which the airstrip itself, is constructed. . .' Without the 'approach areas,' an airport is indeed not operable. Respondent in designing it had to acquire some private property. Our conclusion is that by constitutional standards it did not acquire enough." Griggs v. Allegheny County, supra, at 90.

The question whether repeated aircraft over-flights constitute a taking of particular property under the Causby and Griggs doctrine depends upon three factors: (1) the character of the land itself and (2) the altitude and (3) frequency of the over-flights. Each of these may vary interdependently with the others from one case to the next, so that no definite standards can be imposed here as to altitude or otherwise. Suffice it to say that the allegations of the petition in the instant case delineate a cause of action well within the limits of Causby and Griggs. From the Georgia Supreme Court's discussion of ownership of superadjacent airspace in the *Thrasher* and *Kersey* cases (see footnote 4), it is apparent that the alleged over-flights would amount to a taking in violation, also, of Art. I, Sec. III, Par. I of the Constitution of Georgia.

In these respects the petition stated a cause of action.

■ The defendant has abandoned all its special demurrers except demurrers number 4 and 6 of its "renewed and additional demurrers to the amended petition." Both of these demurrers are directed to specified parts of the petition on the ground that the matter identified is "vague and indefinite," and both attempt to state reasons why the matter is subject to this criticism. Both demurrers urge that the parts of the petition so attacked be

stricken. "Thus each of these special demurrers confuses the distinction between a special demurrer which seeks to eliminate *superfluous matter,* which is accomplished by its being sustained, and one which objects to allegations for *vagueness, uncertainty* and *indefiniteness* where the result of sustaining is nothing more than to require the plaintiff to make his statement clear, certain and definite by inserting the necessary matter. Ga. Procedure and Practice, p. 223, § 9-13. Thus, these special demurrers do not meet the standard of perfection required for their kind." *Hughes v. Jackson,* 109 Ga. App. 804, 808 (137 SE2d 487).

The judgment overruling the defendant's general and special demurrers to the petition is affirmed.

*Judgment affirmed. Jordan and Eberhardt, JJ., concur.*