LOWRY HILL PROPERTIES, INC. v. STATE, BY DOUGLAS M. HEAD, ATTORNEY GENERAL, AND ANOTHER.

200 N. W. 2d 295.

August 11, 1972—No. 43291.

*Warren Spannaus,* Attorney General, *Eric B. Schultz,* Deputy Attorney General, and *Morton H. Letofsky* and *Tibor M. Gallo,* Special Assistant Attorneys General, for appellant.

*Haverstock, Gray, Plant, Mooty & Anderson, Andrew C. Selden, Charles K. Dayton,* and *Robert E. Bowen,* for respondent.

Heard before Knutson, C. J., and Rogosheske, Peterson, and Mac-Laughlin, JJ.

PER CURIAM.

The State of Minnesota appeals from a judgment, pursuant to an order granting a peremptory writ of mandamus, directing it to institute condemnation proceedings in order to compensate petitioner, Lowry Hill Properties, Inc., for damages to its apartment buildings resulting from the shocks of pile driving in the construction of a highway in close proximity to petitioner's property.

This appeal is the second of several involving the disposition of claims by petitioner against both the contractors and the state for damages resulting from the stated construction activity. The first, Lowry Hill Properties, Inc. v. Ashbach Const. Co. 291 Minn. 429, 194 N. W. 2d 767 (1971), recites the facts in sufficient detail, the most important of which for present purposes is that defendant contractors were bound by their contract with the state to assume full responsibility for any damages to private properties, with property damage liability insurance in the minimum amount of $5 million. We there held, in reversing a summary judgment for defendant contractors, that the contractors did not share the state's sovereign immunity since they were engaged in an inherently dangerous or ultrahazardous activity, and that they were independently liable to petitioner under their valid hold-harmless agreement with the state, irrespective of any potential claim against the state. Neither there nor here was there any intimation that the contractors or their insurers were unable to respond fully to any award for plaintiff-petitioner's claim for damages.

The issue of inverse condemnation was prompted by the trial court's original summary judgment for defendant contractors, in which it expressed its opinion that plaintiff-petitioner's exclusive remedy was by a mandate against the state for inverse condemnation. We consider the issue in a limited context, for in a nontechnical and practical sense it has been rendered virtually moot by our reversal of that summary judgment. We are not, in these circumstances, prompted to undertake

a comprehensive consideration of the general issue of whether a constitutional taking occurs where the state's ultrahazardous activity in the performance of a public construction project causes unintended structural damage to private property in proximity to the construction project. The limited issue, not dispositive of that general issue, is whether inverse condemnation may be mandated where the owner of the private property, as here, has other adequate legal remedies. Holding that it may not, we reverse.

Our state's constitutional provision requiring the payment of just compensation where private property is "damaged for public use," as we stated in Nelson v. Wilson, 239 Minn. 164, 168, Note 3, 58 N. W. 2d 330, 333, Note 2 (1953), was incorporated by amendment to avoid the hardships resulting from a more restricted use of the word, "taking," in the original constitutional phrase, "taken for public use."[1] The development of the inverse condemnation concept is, with like purpose, a means of circumventing the state's sovereign immunity from tort claims, the more warranted where the private property owner is without other remedy for his damage than the grant of an individual claim by the legislature. The state has the right in mandamus proceedings to compel condemnation, as we indicated in State, by Peterson, v. Anderson, 220 Minn. 139, 152, 19 N. W. 2d 70, 76 (1945), to show that the private property was not damaged or "that the state proposes to remedy or has remedied the construction which causes the damage." From

---

[1] Minn. Const. art. 1, § 13, provides: "Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured." The general issue, nevertheless, is whether the word "damage" contemplates property damage of recurring or permanent nature to the exclusion of a nonrecurring and temporary property damage in the more conventional tort situation. It is an issue on which the cases in other jurisdictions with like constitutional provision are divided. See, Van Alstyne, *Inverse Condemnation: Unintended Physical Damage,* 20 Hastings L. J. 431, 478; Mandelker, *Inverse Condemnation: The Constitutional Limits of Public Responsibility,* 1966 Wis. L. Rev. 3, 24. Among our cases, for comparison, see State, by Youngquist, v. Hall, 195 Minn. 79, 261 N. W. 874 (1935), and Nelson v. Wilson, 239 Minn. 164, 58 N. W. 2d 330 (1953). We held in Thomsen v. State, by Head, 284 Minn. 468, 170 N. W. 2d 575 (1969), and State, by Mattson, v. Prow's Motel, Inc. 285 Minn. 1, 171 N. W. 2d 83 (1969), that the issue of whether damages to private property constitute a taking in the constitutional sense is a matter of law to be decided solely by the court.

the outset and until the trial court directed that it had no other remedy, petitioner contended that it had a remedy by resort to the state's hold-harmless agreement with its contractors. Denying petitioner's present application for inverse condemnation and restoring it to its plainly adequate state-provided remedy, without a cumulative remedy, patently results in no hardship or deprivation.

Reversed.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.