R. D. ANDRUS and Virginia M. Andrus et al., Plaintiffs and Appellants,

v.

STATE of Utah et al., Defendants and Respondents.

No. 13716.

Supreme Court of Utah.

Sept. 5, 1975.

John S. Boyden and John Paul Kennedy, of Boyden & Kennedy, George J. Romney, Salt Lake City, for appellants.

Merlin R. Lybbert, of Worsley, Snow & Christensen, Salt Lake City, for State and County.

Ralph L. Jerman and B. L. Dart, Jr., of Jerman & Dart, Salt Lake City, for Gibbons & Reed Co.

TUCKETT, Justice:

The plaintiffs initiated these proceedings in the District Court of Salt Lake County wherein they seek to recover for damage sustained by their properties from flood

waters and gravel and other debris being deposited thereon. Three separate actions were consolidated in the court below based upon damages which occurred in two separate storms on April 3, 1969, and August 17, 1969. By order of the court the issues of liability were ordered tried separately and the question of damages reserved for a subsequent hearing.

The plaintiffs in this action are all home owners residing in an area immediately west of Wasatch Boulevard near 4500 South in Salt Lake County, Utah. The area is located on the slopes of Mt. Olympus, which rises sharply from the valley floor as a part of the Wasatch Range. In 1968, Gibbons & Reed Company was awarded a contract by the state of Utah to construct a segment of an interstate highway running north and south from Interstate 80 to approximately 4700 South Street. The highway followed Wasatch Boulevard which was relocated on a new alignment to the east of the new highway which was to serve as the Belt Route to and from Interstate 80. The highway as laid out runs on a downgrade from 3900 South to approximately 4600 South Street where there is a sharp upgrade to a point where it joins Wasatch Boulevard. The depression in the grade of the highway is referred to in the record as a "grade sag." In the construction of the highway a cut was made along the slope of the mountain in which the traveled portions and median strip were established. In the process of construction, the curb which ran along the western edge of Wasatch Boulevard was removed. As of April 3, 1969, the date of the first flood, the cut had been made along the slope of the mountain, but the storm drain system for the highway had not been completed. As of August 17, 1969, the date of the second flood, the concrete driving lanes had been laid and the highway drain system had been connected to the storm sewer system of Salt Lake County. Had the curb been in place along the Wasatch Boulevard it would have tended to divert the water which ac-

cumulated during heavy rainstorms from the slope of Mt. Olympus, away from the properties of the plaintiffs. On April 3, 1969, a heavy rainstorm washed earth and debris from the construction site onto the properties owned by Robert P. Kunkel and Frances Kunkel, they being the only plaintiffs who claim damages resulting from the effects of that storm. The proceedings in which Richard Grotepas is the plaintiff name only Gibbons & Reed Construction Company and the state of Utah as defendants.

On August 17, 1969, a heavy rainstorm occurred on the slopes of Mt. Olympus in the vicinity of 4500 South and Wasatch Boulevard during which approximately 2.5 inches of rain fell. The runoff from the slopes and residential areas above Wasatch Boulevard collected on the relocated street and with the west curbing being removed, flowed over the street and onto the Belt Route under construction. The newly constructed grade and driving lanes channeled the water southward, where it collected in the basin formed by the "grade sag" above referred to. The flood waters broke through the embankment on the west side of the freeway and flooded the homes of all the plaintiffs except the plaintiffs Robert and Frances Kunkel. Prior to the storm, gratings or other devices had not been placed at the entrances to the County's storm sewer laterals to prevent their being obstructed by boulders and other debris. During the course of the storm and the flooding, the storm sewers below the construction project became obstructed with debris and the hydrostatic pressure blew the caps from the manholes and water escaped from sewers which added to the flooding problem.

With respect to the liability of the State, the trial court submitted the following proposition to the jury: "The highway project of the state of Utah, including the storm drain system, was unreasonably defective or dangerous." The jury answered that interrogatory in the affirmative and the jury further found that the defective

or dangerous condition was the proximate cause of the plaintiffs' injuries and damage. The trial court entered judgment in favor of the plaintiffs and against the state of Utah. From that judgment the State is here seeking a reversal.

The record supports the proposition that the State created a dangerous condition by its design of the highway project which allowed large quantities of rain water to accumulate in the basin, the banks of which eroded and washed away causing the water collected to be cascaded upon the properties of the plaintiffs and without taking proper steps to provide for proper and adequate drainage of the surplus water.[1] The State by its design and specifications for the highway which was being constructed under the supervision of the Highway Department resulted in diverting the water from former channels which had previously carried it to points beyond the plaintiffs' properties. This conduct comes within the provisions of Section 63–30–9, U.C.A.1953, as amended, which provides as follows:

> Immunity from suit of all governmental entities is waived for any injury caused from a dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement. Immunity is not waived for latent defective conditions.

It is a claim of the State that the plaintiffs' action is barred by the provisions of Section 63–30–10(1), which provides as follows:

> Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of his employment except if the injury:
>
> (1) arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused, or
>
> . . . .

The facts in this case do not bring it within the provisions of that section. The decision to build the highway and specifying its general location were discretionary functions, but the preparing of plans and specifications and the supervision of the manner in which the work was carried out cannot be labeled discretionary functions.

The defendants also claimed that the flooding of the plaintiffs' properties resulted from an inevitable occurrence or an act of God. This issue was submitted to the jury and the jury returned a finding against the defendants' contentions.

We are of the opinion that evidence adequately supports the finding of the jury that the highway project of the State, including the storm drain system, was unnecessarily defective or dangerous. Action of the court entering judgment in favor of the plaintiffs and against the State is affirmed.

In respect to the claims of the plaintiffs against Salt Lake County, the jury returned the following findings: "Salt Lake County was negligent in failing to provide reasonable, adequate drainage facilities for the highway project." The trial court declined to enter judgment against the County, and the plaintiffs have appealed from that ruling. We find no statutory duty on the part of the County to supply drainage facilities for the State highway project. Prior to the construction of the highway in question, the County had employed consulting engineers to study the problem of providing adequate storm sewers in the area. Based on the study of the consulting engineering firms, the County did construct a storm sewer system in the area which, until the occurrences here involved, was adequate to take care of the runoff from storms which had occurred on the slopes of Mt. Olympus above the proposed highway. The County by giving its permission to the State to empty the highway drainage system into the County's sewer would not create liability

1. Sec. 63–30–9, U.C.A.1953; *Sanford v. University of Utah*, 26 Utah 2d 285, 483 P.2d 741.

on the part of the County for the acts of the State or its contractor in failing to provide safeguards to prevent obstruction of the sewer system, nor was the County responsible for the action of the State in emptying a large conduit into the County's smaller conduit. In our review of the record we find no foundation for the assessment of liability upon the County. We are of the opinion that the action of the trial court in granting the motion of Salt Lake County for judgment notwithstanding the verdict was proper.

■ In dealing with the claims of the plaintiffs against Gibbons & Reed Company, the jury found that the contractor was negligent in failing to take reasonable precautions to protect the project during construction. They jury made further findings that Gibbons & Reed did not fail to take proper precautions to provide proper drainage during construction of the project; that Gibbons & Reed constructed the highway in conformance with the plans, specifications, and directions given it by the state of Utah. The jury further found that Gibbons & Reed did not negligently follow plans, specifications, and directions that were so obviously dangerous that no reasonable contractor would have followed them. The jury made the further finding that Gibbons & Reed was not negligent in failing to perform the work required by its contract with the state of Utah with that degree of skill and care ordinarily possessed and exercised by other contractors doing the same or similar work in this locality. Gibbons & Reed having performed its contract with the State in accordance with the plans, specifications, and directions given it by the State with a reasonable degree of skill, we find no basis upon which to find that the contractor was liable to the plaintiffs.[2] The action of the trial court in declining to enter judgment

in favor of the plaintiffs and against Gibbons & Reed was proper.

In these proceedings the State filed a cross-complaint against Gibbons & Reed Company claiming that if the State is liable then it is entitled to a judgment over against Gibbons & Reed under the terms of the contract. The provisions of the contract relied on by the State are as follows:

The Contractor shall indemnify and save harmless the State, its officers, and employees, from all suits, actions, or claims of any character brought because of any injuries or damage received or sustained by any person, persons, or property on account of the operations of the said Contractor; or *on account of or in consequence of any neglect in safeguarding the work*; . . .. [Emphasis added.]

Another provision of the contract provides as follows:

The Contractor shall be responsible for all damage or injury to property of any character, during the prosecution of the work, resulting from any act, omission, neglect, or misconduct in his manner or method of execution of the work, or any time due to defective work or materials, and said responsibility will not be released until the project shall have been completed and accepted. *The Contractor will not be responsible for damage to property due to design failure.* [Emphasis added.]

■ In view of the jury's findings that the contractor carried out the work in a skillful manner and in accordance with the plans, specifications, and directions of the State, we are of the opinion that the State's claim that it is entitled to be indemnified is without basis. In this connection the State in answer to interrogatories submitted to it by Gibbons & Reed Company

---

2. *Marin Municipal Water Dist. v. Peninsula Paving Co.*, 34 Cal.App.2d 647, 94 P.2d 404; *Wood v. Foster & Creighton*, 191 Tenn. 478, 235 S.W.2d 1; *Southeast Const. Co. v. Ellis*, 233 Ark. 72, 342 S.W.2d 485; *Leininger v. Stearns-Rogers Mfg. Co.*, 17 Utah 2d 37, 404 P.2d 33.

stated that the officers, agents and officials of the Utah State Road Commission were unaware of any additional precautions which could have been taken to avoid damage to residents in the area from the possibility of floods. It was further stated that Gibbons & Reed was taking all precautions reasonable and necessary to avoid any problems relating to the flood. The action of the trial court in declining to enter judgment in favor of the State upon its cross-complaint was correct.

The judgment of the court below is affirmed. No costs awarded.

HENRIOD, C. J., and ELLETT and CROCKETT, JJ., concur.

MAUGHAN, J., having disqualified himself, did not participate herein.

J. ROBERT BULLOCK, District Judge, filed dissenting opinion.

J. ROBERT BULLOCK, District Judge (dissenting):

I dissent upon the sole ground that plaintiffs ought to recover against the State under Section 22 of Article I of the Constitution of Utah pursuant to the doctrine of "inverse condemnation" rather than under the Utah Governmental Immunity Act. This is important to the plaintiffs because of the limitation on the amount they may recover imposed by that Act, even if their damages are found to be far greater.

In taking this position I recognize that the decisions of this court, unless over-

ruled, preclude such result.[1] However, I believe the law enunciated in those cases, to the extent that they deny the existence of a constitutional inverse condemnation right of action, independent of legislative enactments or executive grace, does not comport with the great weight of authority throughout the United States.[2] For the reasons stated by Justice Wade in his dissent in the *Fairclough* case,[3] and for the reasons advanced by plaintiffs in their briefs, in my opinion such cases should be reconsidered and overruled.

Section 22, Article I, of the Constitution of Utah provides as follows:

Private property shall not be taken *or damaged* for public use without just compensation. [Emphasis mine.]

The remedy which a property owner prosecutes to obtain compensation under a constitutional provision providing for payment of just compensation when his property has been taken or damages for public use is often referred to in the cases and legal periodicals as "inverse condemnation." Such actions have also been called "reverse condemnation" an action or claim by reason of "de facto" or "common law taking",[4] or affirmative eminent domain. In such actions the owner whose property is taken or damaged for public use without the institution of a condemnation proceeding, himself takes the procedural initiative by bringing an action for damages.

My research indicates that at least 25 states have constitutional provisions similar to Utah's[5] and all but three recognize and

---

1. *Fairclough v. Salt Lake County*, 10 Utah 2d 417, 354 P.2d 105; *Springville Banking Co. v. Burton*, 10 Utah 2d 100, 349 P.2d 157; *State v. Parker*, 13 Utah 2d 65, 368 P.2d 585; *Holt v. Utah Road Commission*, 30 Utah 2d 4, 512 P.2d 658.

2. See footnote 6.

3. "There are many reasons why I think this decision is wrong: (1) It may cause grave injustice to plaintiffs. (2) It is contrary to Section 22, Article I of our State Constitution. (3) It is contrary to a number of our decisions, which it does not purport to overrule. (4) In none of the Utah cases relied on

in the prevailing opinion was the question of whether Article I, Section 22 is self-executing the determining factor. (5) It is contrary to the great weight of authority and the better-reasoned cases. (6) No good reason is pointed out or even suggested why we should revert to this doctrine of sovereign immunity." *Fairclough v. Salt Lake County*, 10 Utah 2d 417, 354 P.2d 105.

4. 3 Nichols on Eminent Domain, Sec. 8.1(2) at 11 (Rev. 3d Ed., J. Sackman).

5. Ala. Art. XII, Sec. 235; Alaska Art. I, Sec. 18; Ariz. Art. II, Sec. 17; Ark. Art. II, Sec. 22; Cal. Art. I, Sec. 14; Colo. Art. II, Sec.

sanction an inverse condemnation action stemming directly from their constitutions and not dependent upon implementing legislation.[6] The state of Arkansas[7] and possibly Wyoming and South Dakota are the exceptions. I am convinced by the

13; Ga. Art. I, Sec. 3; Ky. Sec. 13: "Taken or applied to public use"; La. Art. I, Sec. 2; Miss. Art. III, Sec. 17; Mo. Art. II, Secs. 20 & 21; Mont. Art. III, Sec. 14; Neb. Art. I, Sec. 21; N.M. Art. II, Sec. 20; N.D. Art. I, Sec. 14; Okl. Art. II, Secs. 23 & 24; Pa. Art. I, Sec. 10: "Taken or applied to public use"; S.D. Art. VI, Sec. 13; Tex. Art. I, Sec. 17; Utah Art. I, Sec. 22; Va. Art. I, Sec. II; Wash. Art. I, Sec. 16; W.Va. Art. III, Sec. 9; Wyo. Art. I, Secs. 32 & 33; Ill. Art. I, Sec. 15; Minn. Art. X, Sec. 4.

6. ALABAMA: *City of Fairhope v. Raddcliffe*, 48 Ala.App. 224, 263 So.2d 682 (1972), "That authority (for citizen to bring suit) has long been determined by the courts of this state to arise from § 234 of the Constitution of Alabama." ALASKA: *State Dept. of Highways v. Crosby*, 410 P.2d 724 (Alaska 1966), "Fundamental basis of appellees' claim for damages is in the constitutional provision mentioned  .  .  .  The trial court was in error in failing to recognize the essential nature of this action (inverse condemnation)." ARIZONA: *State v. Leeson*, 84 Ariz. 44, 323 P.2d 692 (1958), The Constitutional provision prohibiting taking or damaging of private property without just compensation is self-executing. CALIFORNIA: *Granone v. County of Los Angeles*, 231 Cal. App.2d 629, 42 Cal.Rptr. 34 (1964), "The effect of Section 14 is to waive the immunity of the state where private property is taken or damaged for public purposes. This liability is imposed by the Constitution and not by statute." COLORADO: *Ossman v. Mountain States Tel. and Tel. Co.*, 32 Colo. App. 230, 511 P.2d 517 (1973). GEORGIA: *City of Atlanta v. Donald*, 111 Ga.App. 339, 141 S.E.2d 560 (1965), "The right of a property owner to maintain an action at law for damages arises by necessary implication from the constitutional prohibition against the taking or damaging of private property for public purposes without just and adequate compensation." KENTUCKY: *Dept. of Highways v. Gisborne*, 391 S.W.2d 714 (Ky., 1965), Assumes that inverse condemnation action automatically arises from constitution. ILLINOIS: *People v. Mt. Vernon*, 404 Ill. 58, 88 N.E.2d 45 (1945), the provision of the constitution guaranteeing compensation if property is taken or damaged is self-executing. LOUISIANA: *Compass v. Dept. of Highways*, 255 La. 422, 231 So.2d 374 (1970), Governmental immunity to suit waived when state takes or damages property. MISSISSIPPI: *State Highway Comm. v. Mason*, 192 Miss. 576, 4 So.2d 345 (1941), This section is self-executing. MISSOURI: *Page v. Metro St. Louis Sewer Dist.*, 377 S.W.2d 348 (Mo.1964), Constitutional prohibition against taking or damaging private property for public use without just compensation is self-enforcing. MINNESOTA: *Lowry Hill Properties v. State*, 294 Minn. 510, 200 N.W.2d 295 (1972), "The development of the inverse condemnation concept, with like purposes, a means of circumventing the state's sovereign immunity from tort claims." MONTANA: *City of Three Forks v. State*, 480 P.2d 826 (Mont., 1971), "The effect of Art. III, Sec. 14 is to waive immunity of the state where private property is taken or damaged for public purposes." NEBRASKA: *Deitloff v. City of Norfolk*, 183 Neb. 648, 163 N.W.2d 586 (1968), Assumes self-execution of constitutional provision. NEW MEXICO: *Garver v. Public Service Co. of New Mexico*, 77 N.M. 262, 421 P.2d 788 (1966), "The right (to an inverse condemnation action) is clearly conferred by the constitution  .  .  ." NORTH DAKOTA: *Jamestown Plumbing and Heating Co. v. City of Jamestown*, 164 N.W.2d 355 (1969), "Since the Constitution guarantees the right to compensation, this obligation is in effect an implied contract on the part of the state to compensate for the damage which it has caused." OKLAHOMA: *Town of Pittsburg v. Cochrane*, 200 Okla. 497, 197 P.2d 287 (1948), No question of right to institute a reverse condemnation suit. PENNSYLVANIA: *O'Keefe v. Altoona City Authority*, 9 Pa.Cmwlth. 397, 304 A.2d 916 (1973), "When land has been taken without condemnation procedure, the landowner may petition the court for award of damages. TEXAS: *City of Abilene v. Burk Royalty Co.*, 470 S.W.2d 643 (Tex., 1971), Assumes self-execution of constitutional provision. VIRGINIA: *Heldt v. Elizabeth River Tunnel Dist.*, 196 Va. 477, 84 S.E.2d 511 (1954), "This section is self-executing and a landowner whose property has been damaged for public use may recover in a common-law action." WASHINGTON: *Martin v. Port of Seattle*, 64 Wash.2d 309, 391 P.2d 540 (1964), The Washington Constitution affords or provides the basis for compensation when land has been taken or damaged by the state. WEST VIRGINIA: *Morgan v. City of Logan*, 125 W.Va. 445, 24 S.E.2d 760 (1943), The common-law immunity of municipal corporations for damage has been abrogated by this section. Also, *State ex rel. Phoenix Ins. Co. v. Ritchie*, 175 S.E.2d 428 (W.Va.1970). Writ of mandamus will lie to compel institution of condemnation proceedings.

7. *Roesler v. Denton*, 239 Ark. 462, 390 S.W. 2d 98 (1965).

overwhelming weight of authority that Section 22 is self-executing and that it does not require legislation to give it effect.[8] In fact, if legislation were enacted, it is my opinion that the proper inquiry by the courts would then be whether the clear right granted by the Constitution has been abrogated or denied by the *legislation*.[9]

---

8. See note 6.

9. See *Van Alstyne, Statutory Modification of Inverse Condemnation: The Scope of*   *Legislative Power*, 19 Stan.L.Rev. 727, 730 (1967).