HEFTLER INTERNATIONAL, INC., Plaintiff and Appellant, *v.* PLANNING BOARD ET AL., Defendants and Appellees.

No. O-69-66.     Decided December 15, 1970.

---

*J. M. Calderón García, J. M. Calderón Cerecedo, William J. Riefkohl, Cristóbal Colón,* and *Francisco Alonso Rivera* for appellant. *J. F. Rodríguez Rivera, Acting Solicitor General,* and *Américo Serra, Assistant Solicitor General,* for appellees.

MR. JUSTICE MARTÍNEZ MUÑOZ delivered the opinion of the Court.

The action brought by Heftler International, Inc., object of the judgment appealed from, constitutes a direct attack based on constitutional provisions against the "P District" (Public Projects) system of classification utilized by the Planning Board in the zoning field in Puerto Rico. Therefore, appellant resorted to a civil action which it brought in the Superior Court, San Juan Part, on July 20, 1967, against the Planning Board, the Department of Public Works, and the Commonwealth of Puerto Rico. In said complaint plaintiff alleged being the owner of a parcel of land of 5,259 square meters, located south of Intersection No. 131, between Urbanización Santa Rosa and Santa Rosa Commercial Center in Bayamón,

having acquired it in the year 1963 for the amount of $135,000. At the time of the acquisition and since the year 1960, the parcel acquired by it had been classified for public use ("P" District), according to the Zoning Map approved by the Planning Board for the City of Bayamón. Plaintiff also alleged that at the time the complaint was filed, seven (7) years had elapsed during which the Planning Board has maintained the parcel of land under the same classification, the State having failed to initiate any proceeding whatsoever to acquire said land, plaintiff being deprived, in turn, of the "use, benefit, enjoyment, and development" thereof. It closes with the prayer that the State be ordered to condemn it by the payment of $264,950 which is alleged as compensation for its fair value, plus $46,500 for damages, or that, in the alternative, the Planning Board be ordered to "release" the land and also pay $166,450 for the damages sustained.

Defendant moved for the dismissal of the complaint, alleging that the court lacked jurisdiction to entertain and take cognizance of this kind of litigation. The Superior Court agreed. By judgment of March 19, 1968, and order concerning a motion for reconsideration filed by plaintiff, the court declared itself without jurisdiction and dismissed the complaint.

The Superior Court grounded its decision on the fact that plaintiff had not exhausted the remedies it had available in the administrative forum pursuant to the law, to obtain a reclassification or different use of the parcel and that, in entertaining the lawsuit, it would be encroaching upon the administrative functions corresponding at law to the organism having authority therefor, in this case, the Planning Board.

Plaintiff appealed before us stating the constitutional questions on which it bases its appeal. In synthesis, Heftler alleges that the "freezing" of its land under the classification "P District", adopted and maintained by the Board for more

than seven years, constitutes a dispossession of its property without the due process of law, thus violating the constitutional guarantees to which it is entitled under Article II of the Constitution of the Commonwealth of Puerto Rico and the Fifth Amendment of the Constitution of the United States. It argues that since its right to just compensation for the property taken plus the damages suffered is of a constitutional nature, the same cannot be denied by reason that there exists an administrative procedure available to release the property from the classification affecting it.

■ Although we sympathize, in part, with appellant's position, we cannot agree with the result it seeks. The Planning Board was created for the general purpose of guiding a coordinated, adjusted, and economic development of Puerto Rico, for the best promotion of the general welfare of its inhabitants and the efficiency in the process of development, of the distribution of the population, of the uses of the land, and of the public improvements. Act No. 213 of May 12, 1942, § 3, 23 L.P.R.A. § 3. To implement these purposes the Board adopted a Zoning Regulation applicable to the urban areas, or areas to be urbanized, "establishing by districts or zones the use and development of public and private lands and buildings, for such purposes as: agriculture, industry, trade, transportation, residence, public or semipublic and civic activities, and recreation, including beaches and bathing resorts." 23 L.P.R.A. § 9. The authority of the Board to classify lands for public use, "P" District, rests on this provision. 23 R.&R.P.R. § 9–401.[1] It would be anachronic, already in the last third of this century, to doubt the rights and the duty of the State, in view of the public needs, to impose limitations on the use and enjoyment of property. The right to enjoy-

---

[1] The Zoning Regulations formerly in force governed until February 7, 1970, date on which the new Regulations went into effect. Said Regulations and the ones now in force contain the same provisions as to the Regulation on the uses permitted in the P Districts.

ment of private property is recognized in our Constitution. But the latter also establishes that this enjoyment must yield to the needs of the community. Article II, § 7. In *Commonwealth* v. *Márquez*, 93 P.R.R. 382, 390 (1966), we said:

"At this late date it is already well known that the community, through its Government, may establish limitations on the right of ownership for the benefit of the general welfare."

As examples of the exercise of the State's power to intervene with the private property through condemnation, see *Commonwealth* v. *Rosso*, 95 P.R.R. 488 (1967); *M. Mercado e Hijos* v. *Superior Court*, 85 P.R.R. 354 (1962); *Commonwealth* v. *Heirs of Gautier*, 81 P.R.R. 565 (1959).

The case at bar is a rather crude example, in our opinion, of the exercise of the State's power to adopt regulations based on the police power: The classification of lands into "P" District.

Compensation of any kind whatsoever does not mediate herein. The right to enjoyment of the property is practically eliminated. According to this classification, the use of the property thus marked is restricted as follows (23 R.&R.P.R. § 9–401):

(1) Public park.
(2) Public parking space.
(3) Public education institution.
(4) Public housing project.
(5) Government offices.
(6) Public hospital.
(7) Fire station.
(8) Police station.
(9) Public airport.
(10) Public cemetery.
(11) Other public uses.

As may be seen, the Regulation only permits a "public use" in a "P" District. There is no doubt of the severity of these restrictions, to the point that over 20 years ago this

Court was moved to state in *Segarra* v. *Planning Board,* 71 P.R.R. 139, 142 (1950) :

"We assume, without deciding, that land which is zoned for public use must be acquired by purchase or condemnation by the government within a reasonable time."

Nine years later, in 1959, in the report rendered by the Governor's Committee for the study of the Civil Rights in Puerto Rico, it was sustained that "[the] Board violates constitutional rights in the classification of districts for public purposes. The procedure of zoning a lot as P (public) means that the owner's property rights in the land are seriously affected. This is equivalent to a condemnation without just compensation or due process of law." See, also, *Inmobiliaria Borinquen, Inc.* v. *García Santiago,* 295 F.Supp. 203 (1969), in the opinion of Mr. Justice Hiram R. Cancio of the District Court of the United States for the District of Puerto Rico, the complaint of landowner asserting that action of the Commonwealth of Puerto Rico officials in directing owner to "reserve" two parcels of land for future acquisition by Commonwealth without any action having been taken with respect to those parcels for more than three years constituted the taking of property without just compensation and deprivation of constitutional and civil rights of landowner was sufficient to state a cause of action under the Civil Rights Act, 42 U.S.C.A. § 1983.

Plaintiff acquired the property in the year 1963 when it was already classified "P". In 1965 it inquired from the Planning Board whether the conditions which gave rise for the classification "P" continued being valid, and submitted a question concerning a project for the construction of buildings to be dedicated to commercial and recreational facilities and for professional offices. In 1966, eight months later, the Board informed it that in a meeting it had been determined that the classification and "freezing" of the property for

public use would continue and that it was incumbent upon the Department of Public Works to proceed to its acquisition.

The question is limited to the determination of whether or not, under the circumstances of this specific case, the Superior Court could entertain an action brought by the owner against the Government for the purpose of obtaining the "defreezing" or otherwise, the condemnation by just compensation for some lands classified "P." This is the action known as "Inverse Condemnation." It has been said that this action has a new name for an old redress—the owner's right to protection for the taking of his property without compensation. *City of Atlanta* v. *Donald*, 141 S.E.2d 560 (February 1965).

Article II, § 7 of the Bill of Rights of the Constitution of Puerto Rico, consecrates the fundamental right of man to the enjoyment of property. Article II, § 9 establishes also that:

"Private property shall not be taken or damaged for public use except upon payment of just compensation and in the manner provided by law."

Similar protection of the right to property is found in the Constitution of the United States. The Fifth Amendment says: "No person shall . . . be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

■ The purpose of the "inverse condemnation" action is to serve as a protection for the owners to force the State to comply with the constitutional provisions guaranteeing that no person shall be deprived of his property without the due process of law and without having received compensation.[2]

---

[2] Professor Daniel R. Mandelker states in his book, Managing our Urban Environment, that "Inverse Condemnation" is:

". . . a technique generally unoticed [sic] in the scholarly journals, can be used by the uncompensated landowner to force payment for property taken when the public agency has refused to compensate. . . . In most states

We are deeply concerned with the method for the classification of land for public use being utilized here, without setting a limitation to the inaction of the State to take affirmative action. See Negrón García, Luis F., *"La Planificación Urbana en Puerto Rico y el Debido Procedimiento de Ley,"* 36 *Rev. Jur. U.P.R.* 63, 70–71 (1967). It seems to us that the *reasonable time* rule suggested by this Court in some cases —*Segarra* v. *Planning Board, supra; Waymouth Corp.* v. *Planning Board,* 80 P.R.R. 599 (1958)—provokes differences of opinion, even among reasonable minds, with the corresponding increase in disputes in the judicial and in the administrative forums resulting in expenses, annoyances, and delays.

A classification "P" constitutes almost a total freezing. The owner cannot use it during the time it is classified thus. It merely has the appearance of a condemnation although without compensation. It seems that the police power of the State is fused with that of condemnation. It is urgent that the corresponding authorities pay attention to these inequities in the system of classification of land in force for the purpose of correcting them for the benefit of a sound public administration. The method followed by the Board for the classification of districts for public use has been pointed out as a "basic defect." Professor Miguel A. Velázquez Rivera, observes:

"Another basic defect is the method followed by the Board for the classification of districts reserved for public use in the Zoning Regulations. After the Planning Board classifies a certain parcel of land or lot as 'P' District (Public Projects), said parcel of land or lot is frozen for all practical effects. The owner cannot use it as long as said classification is effective, or until the parcel of land is acquired by the Government by purchase or condemnation. Neither the statute, nor the planning regulations, have limited the number of years during which a parcel of land

the inverse condemnation action is self-executing, which means that it can be brought under the constitutional eminent domain clause even in the absence of enabling legislation. ..."

classified as 'P' District may remain in such situation. If the Government does not acquire it during a reasonable term, the practical result is that the citizen is limited in his constitutional right of not being deprived of his property without just compensation. On some occasions, after the lapse of a number of years, the Government desists from carrying out the public works for which the parcel of land has been reserved. In such cases, the practice followed is that of returning the parcel of land to its owner without paying any compensation whatsoever for the loss of use. For years, the citizen affected by the classification was bound to pay taxes on the parcel of land, despite the fact that he did not have the free use and enjoyment thereof. Finally, and by virtue of Act No. 70 of June 18, 1954, the properties under these circumstances were declared tax exempt." XXII-4 *Rev. C. Abo. P.R.* 445, 464-465 (August 1962).

See Netherton, R. D., *Implementation of Land Use Policy: Police Power v. Eminent Domain,* III Land and Water L. Rev. 1 (1968).

■ Plaintiff alleges that by reason that the constitutional provisions invoked are self-executing, *Alberio Quiñones* v. *Commonwealth,* 90 P.R.R. 791, 794 (1964), the exhaustion of the administrative remedies is not required. Actually, it has been so decided in several places. *Sneed* v. *County of Riverside,* 32 Cal. Rptr. 318; 218 Cal. App. 2d 205 (1963).

■ We prefer not to render our decision at the present time. Heftler can and must resort to the Board. Actually, its inactive attitude, except for a mere consultation in 1965 maintained during these years, has not been helpful in this case. In Puerto Rico we have always insisted that the administrative remedies available must be utilized before resorting to the courts. Actually, in this case this seems to be most convenient for the orderly administration of justice and thus ". . . harmonize the functions of the judicial branch with its sister branch, the executive." *Commonwealth* v. *12,974.78 Square Meters,* 90 P.R.R. 494, 501 (1964). Therefore, we

choose this course following the rule established in *Waymouth Corp.* v. *Planning Board, supra* at 601:

"[2–4] The fact that a great portion of said land is reserved for public use does not mean that the right of ownership over the same is wholly suspended. The Board itself admits before us that the reserving of specific land for public use does not imply a freezing of the right of ownership. If this is so, in a case like the present, the Board should determine whether because of the lapse of time or the improbability that said land be utilized for an immediate public end or purpose, the test of ·reasonableness established by our case law would support their denial of any subdivision hereof, *Segarra* v. *Planning Board,* 71 P.R.R. 139, 142–43 (Snyder 1950). By this test it is intended to avoid the owner's speculation with public necessity, raising the value of condemnation or forcing the State to anticipate its plans, but at the same time to protect the owner from any inertia or extravagance of the police power of the State. To consider the simple reservation of land for public use as an indeterminate refusal is not sufficient reason to deny a petition for subdivision, particularly in a case like this, in which possibly not all the land comprised in the petition is necessary for public use. *The most advisable thing at this moment is to remand the case so that the Board may determine not only the reasonableness of the time that has elapsed from the declaration of the reserve for public use, without the State having begun the condemnation proceeding, but also how much longer will the condemnation proceeding last, to enable this Court ·to determine, as a question of law, if the refusal to allow the owner to use its property, results arbitrary, unreasonable or confiscatory."* (Italics ours.)

■ Heftler had available the following remedies and did not make use of any of them before filing its complaint in the Superior Court:

1. Request the reconsideration of the order of the Board in relation to its "consultation."

2. Appeal before the Board of Appeals on Constructions and Subdivisions. 23 L.P.R.A. § 28.

3. Request the reconsideration of the adverse decision of the Board of Appeals. 23 L.P.R.A. § 28 (c).

4. Request a rezoning of the land.

The judgment appealed from will be affirmed.

Mr. Chief Justice Negrón Fernández and Mr. Justice Santana Becerra did not participate herein.

